**In re William Erby CANON, Jr. and Margaret Agnes Canon, Debtors.**

**Richard LINGENFELTER and Dorothy Lingenfelter, Plaintiffs,**

v.

**William Erby CANON, Jr. and Margaret Agnes Canon, Defendants.**

**Bankruptcy No. 83–00091–2.**

United States Bankruptcy Court, W.D. Missouri.

Nov. 5, 1984.

Gregory O. Grounds, Kansas City, Mo., for plaintiffs.

John R. Stonitsch, Kansas City, Mo., for defendants.

### MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

William and Margaret Canon, hereinafter debtors, filed a joint petition in bankruptcy under Chapter 7 on January 17, 1983. Thereafter Richard and Dorothy Lingenfelter, hereinafter plaintiffs, filed a complaint contending that their debt arising out of default judgment obtained in the Circuit Court of Jackson County, Missouri, was nondischargeable. Debtors answered by

general denial. The matter was heard and taken under advisement.

Debtors operated a beauty salon in Independence, Missouri. In May of 1981 plaintiffs began negotiations to purchase the business. Eventually a contract was executed in which plaintiffs agreed to pay $9,500 for the going business, its name, equipment, fixtures and the lease. The parties prepared the documents among themselves; no attorney was retained by either side to assist in the transaction.

The contract provides in part that—

"10 ... (a) Sellers will ... convey to Buyers, good and marketable title to all property agreed to be sold by Sellers hereunder free and clear of all liens and encumbrances, except those noted by Sellers in the Affidavit of Sellers attached hereto; ...

"12. The Sellers represent to the Buyers that they have no creditors and owe no money to any person, firm or corporation, except those listed in the Affidavit attached hereto; that he has paid in full for all fixtures, stock of goods, equipment and other property covered by this agreement; and that there are no liens or encumbrances of any kind on any of such property; and warrants that he can convey a free and clear title to all thereof. The Buyers, relying upon such representations have agreed to waive the requirements of Article 6 of the Uniform Commercial Code relating to bulk transfers. In consideration thereof, the Sellers shall indemnify and save harmless the Buyers against any and all claims made by any person, firm or corporation claiming to ... have a lien or encumbrance on any of the property covered by the agreement".

Plaintiffs took possession of the business and began to operate it. In August of 1981 an Internal Revenue agent called on the plaintiffs at the business and told them there was an IRS lien on the furniture and fixtures. Plaintiffs' efforts to get the liens released were unsuccessful. Debtor is still paying on the debt. Plaintiffs paid nothing on the obligation. The evidence shows that tax liens were filed in June, October and November of 1980. Debtor testified that he was unaware of the liens until after this case was filed. Although plaintiffs searched the lien register prior to the closing of the sale, they were unable to locate the filings.

After the sale plaintiffs were served notice of employment taxes due the State of Missouri as to which plaintiffs were liable. Section 288.110, R.S.Mo.1978. These taxes were for the fourth quarter of 1980 and the first and second quarters of 1981. Plaintiffs paid these taxes in the sum of $443.39. None of these debts were listed in the affidavit attached to the contract of sale. Debtor William Canon admitted that he knew, prior to the sale, that he owed federal taxes but denies knowing of the other taxes or of the tax lien.

After learning of the tax liens plaintiffs wrote the IRS, asking that they pick up the property to which the liens had attached. There was no response to the letter. The IRS never picked up the property. Plaintiffs closed the business in February of 1982 and sold the fixtures and equipment. They then filed suit in state court and recovered $17,486.88 in actual damages and $25,000 as punitive damages. Debtors made no appearance or defense in the state court proceeding.

Plaintiffs allege that the debt to them is nondischargeable under Section 523(a)(2) of the Code, Title 11, U.S.C. That section provides that an individual is not discharged from a debt—

"for obtaining money ... by

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's ... financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money ... reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive..."

Although plaintiffs recovered in state court on theories similar to that set out in

the statute, it was by default and this Court is unable to conclude that the judgment in state court was based upon the finding of facts which would result in the same conclusion here as a consequence of collateral estoppel or res judicata. This Court, therefore, is obligated to make its own findings and conclusions. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

■ Plaintiffs have the burden of proof on the issues and must make a showing by clear and convincing proof. *Matter of Stewart*, 7 B.R. 551, 552 (Bkrtcy.MD Ga.1980); *In re Aldrich*, 16 B.R. 825 (Bkrtcy.WD Ky.1982); *In re Rauch*, 18 B.R. 97 (Bkrtcy.WD Mo.1982). Plaintiffs must show that the fraudulent representations were made knowingly and intentionally. *In re Petrini*, 23 B.R. 981 (Bkrtcy.ED Pa.1982). The exception to discharge is to be narrowly construed. *In re LoBosco*, 14 B.R. 739 (Bkrtcy.ED NY 1981); *Matter of Slutzky*, 22 B.R. 270 (Bkrtcy.ED Mich. 1982).

Here the evidence shows that debtors knew of the delinquent federal taxes although they may not have known about the liens. The testimony is insufficient to enable the Court to conclude that debtors had to know or should have known that the liens were filed. The evidence also shows that debtor William Canon knew or should have known that unemployment taxes were due the State of Missouri. He operated the business and knew that payments had to be made from time to time. Margaret Canon was employed elsewhere and her knowledge of the business was limited. Although she signed the contract for sale and the affidavit, the evidence shows and the Court finds that she had no knowledge of the business and that her signature on the affidavit does not constitute such affirmative and extrinsic representations as would permit the Court to find that the debt as to her is nondischargeable. The Court finds that any obligation of Margaret Canon to plaintiffs is discharged.

The misrepresentation must be materially false. Here the tax liens exceeded $22,-000. The entire sale price of the business was only $9,500 and part of that sum was reserved for payment of the debts identified in the affidavit. Obviously the sale price was insufficient to pay the tax liens. If they could not be released, in all likelihood the sale would not have gone through at that price but would have had to be renegotiated to eliminate any value of the property subject to liens. The Court finds that the representations were materially false and that they respected debtors' financial condition.

Prior to execution of the sale agreement plaintiffs searched the courthouse records for tax liens but found none. The evidence shows that the liens were on file; plaintiffs simply did not find them. There was no evidence that the liens were not in the usual place. Plaintiffs did not retain an attorney to assist them in making this purchase. The Court can only conclude that the search through the tax lien file was not done completely.

■ Where a debtor makes a representation as to the state of a public record, reasonable reliance would seem to require that the party to whom the representation is made and who intends to rely upon it has an obligation to examine that public record. *Matter of Garman*, 643 F.2d 1252 (7th Cir.1980); *In re Montbleau*, 13 B.R. 49 (Bkrtcy.Mass.1981); *Matter of Stout*, 39 B.R. 438 (Bkrtcy.W.D.Mo.1984). A routine attempt to verify a representation meets the test of "reasonable" reliance; it is not an admission that there was no reliance on the representation nor does the Court so find.

The harder question is whether having undertaken an inquiry, is the plaintiff required to do so completely or risk being unable to demonstrate reasonable reliance? As a matter of experience the Court recalls that searching a lien record is more difficult than searching a title. There is no evidence of an index or the condition of the files so that the Court can conclude that the search was so casual as to be legally insufficient. Nor is the Court inclined to conclude that the failure to retain an attor-

ney to investigate causes the search to be insufficient. Where, as here, the representation as to tax liability is false, and plaintiffs made a reasonable effort to verify that representation, their reliance upon it is reasonable. The attempt to verify by searching the record was in good faith; the hiring of assistance is not a guarantee of a different result. The failure to hire assistance, therefore, does not compel the Court to find that reliance was unreasonable.

Debtor William Canon denies making the representations with intent to deceive. The Court has found that he knew or should have known of the liabilities when the sale was made. The liability to the State was transferred to plaintiffs. That non-disclosure clearly had harmful consequences. The failure to disclose federal tax liability is only of significance and would only have impact on the sale if William Canon knew of the lien. The Court is not persuaded by the evidence that he was aware of the lien and, therefore, non-disclosure of the liability alone would have little impact on the transaction for neither plaintiffs nor the business property would have liability for payment.

But such an analysis imposes too much sophistication on the parties. William Canon had to know that disclosure of his federal tax liability would chill if not kill the sale. The tax liability had to be fresh in his mind since he had discussed it with IRS agents in May of 1981 just before the agreement day that the sale was signed. It is unlikely that the parties would be able, without expert assistance, which they were not inclined to obtain, to design a sale which would insulate the ongoing business from liability. Certainly the buyers would not be inclined to believe they had no exposure absent some representation from the Internal Revenue Service. The Court finds, therefore, that debtor William Canon concealed the tax liability with intent to deceive plaintiffs.

As a result of this failure to disclose plaintiffs had to pay the State of Missouri the sum of $443.39. Plaintiffs made no payments on the federal taxes and had no obligation to do so. There is no question, however, that the existence of the tax liens, discovered upon a visit by a revenue agent to the shop, upset plaintiffs' expectations as to the success of the business. The evidence shows that plaintiffs spent some time trying to resolve the problem created by the liens. That effort took away from the energy available to make a profit on the business and that factors other than the tax liens caused plaintiffs to close. Among those factors were the competitive nature of the business and the changing of employees who normally took their customers with them.

The Court is not persuaded that the business was closed because of the tax liens. The Court is persuaded, however, that plaintiffs would not have purchased the business if the tax liens were disclosed. They are entitled to have judgment for the purchase price, $9,500.00, and for the amount paid to the State of Missouri for unpaid employment taxes, $443.39. This portion of the state court judgment, $9,943.39, is nondischargeable as to William Canon. The balance of the judgment is discharged.