In re Robert Floyd ASHLEY, aka Robert Ashley, Debtor.

Robert Floyd ASHLEY, aka Robert Ashley, Appellant,

v.

C. Eugene CHURCH; Helen L. Church, Appellees.

No. 88–5944.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 10, 1989.*

Decided Feb. 8, 1990.

As Amended on Denial of Rehearing and Rehearing En Banc June 11, 1990.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Robert G. Leff, Robert G. Leff & Associates, Encino, Cal., for appellant.

Joseph S. Dzida, Los Angeles, Cal., for appellees.

Before BROWNING, FARRIS and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Robert Ashley appeals from the decision of the district court affirming the bankruptcy court's judgment that Ashley owes the appellees, Helen and Eugene Church,

$61,000 in principal damages and $10,000 in attorney's fees, and that the debt is not dischargeable in bankruptcy. This Court has jurisdiction under 28 U.S.C. § 158(d) to review the district court's decision. We affirm in part and reverse in part.

## I

The Churches first encountered Ashley, an accountant, in the late 1970s, when they sought his advice on the tax consequences of selling a certain parcel of real estate which they owned; later, they hired Ashley to prepare their tax returns for 1978, 1979 and 1980. During this period, Ashley was involved with Darrold and Dwight Efflandt in a plan to finance, establish and develop machine shops. The Churches eventually invested in two of those shops, Trinity Manufacturing Corporation ("Trinity") and American Machine Manufacturing Corporation ("AMM"). Only the AMM transactions are at issue in this case.

In January 1981, the Churches made a loan of $36,000 to AMM; in April of that year, they made a second loan of $25,000. Each loan was made by means of a check payable to AMM; and in exchange for each, the Churches received a promissory note from the Efflandts and a deed of trust in Darrold Efflandt's residential property on Pine Street in El Segundo, California. The parties disagree about what role Ashley played in these transactions. The Churches allege that Ashley induced them to lend the money by falsely telling them that he knew AMM to be solid and profitable, that he had made unsecured loans to AMM himself, and that the Pine Street property was sound collateral for the Churches' loans to AMM. Ashley contends that he did little more than introduce the Churches to the Efflandts, who were the principals in the AMM enterprise.

In June 1981, the Churches learned from a public notice that the Pine Street property was to be sold in a foreclosure proceeding. At about the same time, payments to the Churches on the Trinity and AMM loans ceased. The Churches brought a state action, which was stayed when Ashley and the Efflandts filed for bankruptcy in federal court. The Churches then brought this adversary action in the bankruptcy court, claiming that Ashley and the Efflandts must repay them for the loans they made to AMM and Trinity, and that this debt was not dischargeable under federal bankruptcy laws.

The bankruptcy court ruled in favor of the Churches with respect to the two AMM loans, and held Ashley and Darrold Efflandt jointly and severally liable for repaying the $61,000. According to the bankruptcy court, Ashley and Darrold Efflandt "knowingly induced [the Churches] to make these two loans by means of false, material misrepresentations concerning the profitability and creditworthiness of ... [AMM] and the value of the Efflandts' equity in the Pine Street property." The court also awarded the Churches $10,000 for attorney's fees. Ashley appealed to the district court, which affirmed the bankruptcy court's decision.

## II

On this appeal, Ashley raises four issues. He argues that the bankruptcy court erred (A) in considering the deposition testimony of Al Behrens, (B) in holding that the federal bankruptcy code precluded discharging the Church debt, and (C) in awarding attorney's fees to the Churches; he also argues that the district court erred (D) in denying Ashley's claim for a new trial owing to the loss of portions of the bankruptcy court record. We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*, *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986); we review the district court's conclusions of law *de novo*, *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### A. Admissibility of the Behrens Deposition

Ashley contends that the bankruptcy court committed reversible error by admitting into evidence the deposition testimony of Mr. Behrens because (1) neither Ashley nor his attorney attended the deposition, (2)

Behrens did not sign the deposition, (3) Behrens was available as a witness at the time of trial, and (4) portions of the deposition testimony were irrelevant. None of these arguments has merit.

■ The absence of Ashley and his attorney from the Behrens deposition did not preclude the use of the deposition against Ashley. Behrens' deposition was admissible "against any party who was present or represented at [its taking] or who had reasonable notice thereof." Fed.R.Civ.P. 32(a). Ashley does not dispute that the Churches notified his attorney that they were planning to depose Behrens. Instead, he merely alludes to the fact that this attorney "was in the process of withdrawing" from the case when the Churches served notice. That circumstance, however, does not undermine the adequacy of notification. Ashley's attorney was still his counsel of record at the relevant time, and thus the notice was not defective.

■ Nor did Behrens' failure to sign render the deposition inadmissible. The pretrial order, which was issued almost four months before trial, listed the Behrens deposition among the exhibits that the Churches intended to use. Ashley had an opportunity to object then. By not moving to suppress with "reasonable promptness after [the] defect [was], or with due diligence might have been, ascertained," Ashley waived any objection he may have made on the basis of "[e]rrors and irregularities in the manner in which ... the deposition [was] ... signed." Fed.R.Civ.P. 32(d)(4).

■ Ashley's argument that the Behrens deposition was inadmissible because the Churches did not prove Behrens was unavailable runs counter to the record of the bankruptcy proceedings. The rules permitted the Churches to offer Behrens' deposition if they were "unable to procure the attendance of [Behrens] by subpoena." Fed.R.Civ.P. 32(a)(3)(D). According to the transcript of the bankruptcy proceedings, the Churches satisfied the court, by means of an affidavit of nonservice, that they had made a reasonable, albeit unsuccessful, effort to have Behrens testify in person at the trial.[1] Ashley presents no reason for disturbing the bankruptcy court's conclusion that Behrens was unavailable.

■ The transcript of the bankruptcy proceedings directly undercuts Ashley's argument that the Behrens deposition should have been excluded because of irrelevance. The court made explicit its finding that the contents were "relevant," although not "crucial." *Cf.* Fed.R.Evid. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Inasmuch as the Churches offered the testimony to show that Ashley's representations about the Pine Street property were knowingly false, rather than merely mistaken, and the testimony concerned Ashley's representations to Behrens about the value of that property as collateral, the bankruptcy court certainly did not abuse its discretion in ruling that the deposition was relevant. *See United States v. Kessi,* 868 F.2d 1097, 1107 (9th Cir.1989); *United States v. Gilley,* 836 F.2d 1206, 1213 (9th Cir.1988) ("Decision[ ] whether evidence is relevant ... [is] committed to the [trial] court's sound discretion.").

B. Nondischargeability of the Church Judgment under § 523(a)(2)[2]

Ashley presents four challenges to the bankruptcy court's conclusion that the debt

---

**1.** Ashley did not include the affidavit of nonservice in the record on appeal to the district court, although he had the duty to do so if it was "relevant" to the finding that Behrens was unavailable. *See* Fed.R.App.P. 10(b)(2). Therefore, to the extent that Ashley may have intended to argue that this affidavit did not satisfy the requirements of Rule 32(a)(3)(D), we decline to consider the argument because the necessary record is not before us. *See United States v. Mills,* 597 F.2d 693, 698 (9th Cir.1979).

**2.** The Churches brought this action under 11 U.S.C. § 523(a)(2); Ashley, as well as the bankruptcy and district courts, also treated that section as governing. We therefore do not address

was nondischargeable: (1) he did not receive the AMM loan funds himself; (2) the alleged fraud was not "aggravated"; (3) the alleged misrepresentations did not concern past or present facts; and (4) the Churches' reliance upon his representations was not reasonable.[3]

■ Whether the Church judgment would be nondischargeable under § 523(a)(2) had Ashley received nothing himself as a result of the Church loans is evidently an open question of bankruptcy law. *See* 1 D. Cowans & E. Cohen, *Cowans Bankruptcy Law and Practice* § 619, at 650–51 (1987).[4] At trial, however, Darrold Efflandt testified that Ashley had contributed to a series of loans Efflandt sought in order to keep the financially troubled AMM afloat. According to the bankruptcy court, Ashley's conduct in arranging the Church loans was part of "a business plan to gain a foothold in the machine shop industry." Thus, although slightly attenuated, Ashley's link with AMM placed him in a position to benefit from any infusion of capital to that enterprise. Under these circumstances, inducing the Churches to invest in AMM was indeed obtaining something for himself.[5]

■ Ashley's contention that his fraud was not "aggravated" is irrelevant. Neither the bankruptcy statute nor our precedent requires "aggravated" fraud for exclusion of a debt from discharge under § 523(a)(2). *See, e.g., Rubin*, 875 F.2d at 758–59 (listing requirements for finding of nondischargeability under § 523(a)(2)); *Houtman v. Mann (In re Houtman)*, 568 F.2d 651, 655 (9th Cir.1978) (same for precursor provision).

■ Ashley's argument that his statements to the Churches were mere opinions, rather than representations of fact, lacks credibility. The bankruptcy court found that Ashley knowingly made false statements concerning the profitability and creditworthiness of AMM and the value of the Efflandts' equity in the Pine Street property. According to the testimony, Ashley presented himself to the Churches as someone who had financial knowledge of the AMM operation. A reasonable inference, therefore, is that Ashley made his statements not as opinions but as representations of fact.

■ We also find no clear error in the bankruptcy court's determination that the Churches acted reasonably in relying upon Ashley's statements.[6] Even though there may possibly have been some obligation on the Churches to check public records for prior liens on the Pine Street property, *see Lingenfelter v. Canon (In re Canon)*, 43 B.R. 733, 735 (Bankr.D.Mo.1984), there was no obligation to verify all of Ashley's statements; the Churches need not have

the possible applicability of § 523(a)(6), and the effect thereof. *See Rubin v. West (In re Rubin)*, 875 F.2d 755, 758 n. 1 (9th Cir.1989).

3. Ashley also contends that the bankruptcy court erred in concluding that § 523(a)(4) precluded discharging the debt. We need not reach the issue, however, because we affirm the court's decision that the debt was nondischargeable under § 523(a)(2).

4. At least one court has held that § 523(a)(2) applies to debtors who do not themselves receive the property obtained by fraud. *See Central Finance Co. v. Carroll (In re Carroll)*, 16 B.R. 494 (D.Minn.1982). Certain academic authority also supports this result. *See* 3 *Collier on Bankruptcy* ¶ 523.08[1], at 523–42 (1989) ("The better view seems to be that it is not necessary that the property be actually procured for the debtor himself."). According to one commentator, failing to apply the section to such third party

transactions produces a very short-lived reprieve, for "the debtor would surely be liable under Section 523(a)(6) for any fraudulent conduct not covered by Section 523(a)(2)." 1 *Cowans* § 619, at 651, § 652.

5. One may characterize this event in either of two ways: (a) Ashley was sufficiently closely related to AMM to be considered a recipient of the $61,000 loan; or (b) although not a recipient of the $61,000, Ashley did profit because he had a financial interest in AMM. On either theory, Ashley obtained "money, property, services, ... or ... credit" for himself. 11 U.S.C. § 523(a)(2).

6. Some circuit courts have held that § 523(a)(2)(A) requires only actual, not reasonable, reliance. *See, e.g., Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 342–43 (8th Cir.1987). We do not rule on this issue, however, because we affirm the finding that the Churches acted with reasonable reliance.

checked whether, for example, Ashley had indeed made unsecured loans to AMM.

## C. Award of Attorney's Fees

Ashley contends that the bankruptcy court should not have awarded the Churches attorney's fees. We agree. Apparently, the bankruptcy court concluded that California's so-called *"Prentice* exception" to the American Rule entitled the Churches to recover the money they paid their attorneys in suing the Efflandts.[7] According to that rule, the court could award the Churches "compensation for the reasonably necessary loss of time, attorney's fees and other expenditures" if Ashley's tortious conduct required them "to act in the protection of [their] interests by bringing or defending an action against a third party." *Prentice v. North American Title Guaranty Corp.*, 59 Cal.2d 618, 30 Cal.Rptr. 821, 823, 381 P.2d 645, 647 (1963).

The Churches' action against the Efflandts was not a *Prentice*—like third party action. The Churches also sued Ashley himself—and won recovery from *him*—for the entire injury they suffered as a result of his fraud; unlike the plaintiffs in *Prentice* cases, they were not required to sue a different party for that recovery. *Cf. Prentice*, 30 Cal.Rptr. at 823, 381 P.2d at 647 (plaintiffs recovered principal damages from third parties, and only attorney's fees from defendant).

Fees cannot be allowed simply because the Churches also sued the Efflandts. The bankruptcy court concluded that Ashley and Darrold Efflandt were joint tortfeasors, and held them jointly and severally liable for the Churches' injury. If the Churches were able to recover from Ashley their attorney's fees for suing Efflandt, then they would also be able to recover from Efflandt their attorney's fees for suing Ashley. The implication, of course, would be that total recovery of attorney's fees is permissible whenever one sues joint tortfeasors. We do not believe that this result, or the principle that such a result implies, follows from California's *Prentice* exception.

Nor does the other major California exception to the American Rule permit recovery of attorney's fees for the Efflandt suit. *See McInererny v. Heneghan (In re Estate of Legeas)*, 210 Cal.App.3d 385, 391–92, 258 Cal.Rptr. 858, 864–65 (1989) (explaining California's exceptions to the American Rule). The cost of hiring lawyers to sue the Efflandts was not "the essence of the loss sustained" as a result of Ashley's fraud. *See Isthmian Lines, Inc. v. Schirmer Stevedoring Co.*, 255 Cal.App.2d 607, 613, 63 Cal.Rptr. 458, 463 (1967), *quoted by McInererny*, 258 Cal.Rptr. at 865. Rather, the essence of the Churches' injury was loss of the money that they invested in the ill-fated AMM enterprise; the cost of hiring lawyers to assist in seeking reparation for that injury was no different in character from the cost of hiring lawyers in any standard two-party tort suit.[8]

## D. Burden of Supplementing the Bankruptcy Record

Ashley contends that a substantial amount of his testimony at the bankruptcy proceedings was missing from the record made available to the district court. He argues that the district court should have

---

**7.** It was permissible for the bankruptcy court to resort to state law to decide whether to award attorney's fees because state law governed the underlying claim in bankruptcy. *Christison v. Norm Ross Co. (In re Eastview Estates II)*, 713 F.2d 443, 451–52 (9th Cir.1983); *accord Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740–41 (9th Cir.1985) (state law-authorized award of attorney's fees was incorrect because federal law governed issue in bankruptcy proceeding); *see also Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 n. 31, 269, 95 S.Ct. 1612, 1622 n. 31, 1627, 44 L.Ed.2d 141 (1975) (except when hearing state claims in diversity actions, federal courts do not award at-torney's fees without specific Congressional authorization).

**8.** The Churches urge that *Glendale Fed. Sav. & Loan Ass'n v. Marina View Heights Development Co.*, 66 Cal.App.3d 101, 135 Cal.Rptr. 802 (1977), supports their award of attorney's fees. In *Glendale*, however, the plaintiffs recovered for attorney's fees spent in "resisting a bankruptcy petition which formed part of the fraudulent scheme." *McInererny*, 258 Cal.Rptr. at 865. The Churches have not alleged that Ashley's filing for bankruptcy was part of his fraud.

remanded the case to the bankruptcy court for a new trial or, at least, should have allowed him to supplement the record before making its ruling. In fact, Ashley *had* an opportunity to supplement the record. The appellate rules permitted him to "prepare a statement of [any missing] evidence or proceedings from the best available means, including [his own] recollection." Fed.R.App.P. 10(c). Ashley failed to do so, however.

In light of that failure, the district court was correct to deny Ashley's demand for a new trial. *See United States v. Mills*, 597 F.2d 693, 698 (9th Cir.1979); *id.* at 701 (Schwarzer, J., concurring in the judgment) ("[I]n the normal case, an appellant should not be entitled to raise an issue on appeal based on matters outside the record without compliance with Rule 10(c)."); *see also Herndon v. City of Massillon*, 638 F.2d 963 (6th Cir.1981); *Murphy v. St. Paul Fire & Marine Ins. Co.*, 314 F.2d 30 (5th Cir.), *cert. denied*, 375 U.S. 906, 84 S.Ct. 197, 11 L.Ed.2d 146 (1963); 9 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 210.06 (2d ed. 1985) ("[A] party may not seek a new trial simply on the ground that matters that occurred in the [trial] court are not reflected in the transcript. He must at least make an effort to supplement the record by proceeding under Rule 10(c).").[9]

■ Furthermore, the only significance Ashley assigns to the incomplete character of the transcripts is that the district court was unable to assess the credibility of Ashley and other witnesses at the bankruptcy trial. As appellate courts, however, neither the district court nor this court may disturb the "quintessentially factual determination" of credibility "in the absence of clear error." *United States v. Lummi Indian Tribe*, 841 F.2d 317, 319 (9th Cir. 1988). Ashley has alluded to nothing in the missing portion of the transcript that would lend any support at all to his suggestion that the bankruptcy court's implicit assessments of witness credibility were so blatantly wrong as to require reversal.

We affirm the district court decision in all respects except the affirmance of the award of attorney's fees, which we reverse. We remand the case to the district court for entry of appropriate judgment. The Churches are entitled to their costs on this appeal.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

---

9. Ashley also argues that the district court erred in not requesting that the parties supplement the record. Under the appellate rules, the district court had authority to issue *sua sponte* an order for supplementation if anything "material to either party" was missing. Fed.R.App.P. 10(e). The rule is permissive, not compulsory, however; in light of the fact that Ashley presented no persuasive reason for suspecting that the missing testimony would support reversal, the court did not abuse its discretion in failing to invoke Rule 10(e).