87 F.3d 1046
 96 Cal. Daily Op. Serv. 4486, 96 Daily Journal
D.A.R. 7303
In re Fred H. ARM, Debtor.
Fred H. ARM, Appellant,
v.
A. LINDSAY MORRISON, M.D., INC.; Merlin L. Neff, M.D.,
Inc., Appellees.
 No. 95-55004.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 7, 1996.
Decided June 21, 1996.
 
 Fred H. Arm, Los Angeles, California, in pro. per., for appellant.
 Richard S. Price, II, Fullerton, California, for appellees.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel Jones, Hagan, Volinn, Judges, Presiding. BAP No. CC-93-01763-VHJ.
 Before: GIBSON,* JOHN T. NOONAN, Jr., and THOMPSON, Circuit Judges.
 NOONAN, Circuit Judge:
 
 
 1
 Fred H. Arm appeals the judgment of the Bankruptcy Appellate Panel (the BAP) affirming the denial by the bankruptcy court under 11 U.S.C. § 523(a)(2)(A) of the discharge of the debt owed by Arm to A. Lindsay Morrison, M.D., Inc. and Merlin L. Neff, M.D., Inc. We affirm the judgment of the BAP.
 
 FACTS
 
 2
 The following facts were found after trial by the bankruptcy court:
 
 
 3
 In June 1989, Arm, together with three others including James Halstead and Robert Cooper, entered into a scheme by which an entity known as La Jolla Fidelity Trust (La Jolla) would issue surety bonds to persons lending to Halstead and Cooper. La Jolla was said by Arm to be "a Massachusetts trust," although its legal status was never determined. It was not licensed to do business as an insurer of anything. Its assets were said by Arm to consist of $40 million, including gold bullion in banks in the Far East and Nova Scotia, an island in Hawaii, a herd of Arabian horses worth $15 million, a motion picture production company, 10 million shares of a publicly traded company, and a radio station. Arm said that these assets were pledged to La Jolla but produced no evidence of the pledges and even failed to identify the owners of the assets.
 
 
 4
 The surety bonds of La Jolla were issued in quantity and in blank without knowledge of the terms of the loans or the addresses of the lenders. They were executed by "Fred H. Arm, Trustee for La Jolla Fidelity Trust" and signed by James R. Halstead for "Administrative Benefits Compensation, Inc." Each security bond carried on its face what was labeled "Certificate of Sufficiency," by which one Sharon Turner, "Trust Officer" certified "that the surety named herein is personally known to me; that in my judgment said surety is responsible and qualified to act as such; and that there are ample assets to secure any reimbursement or liability hereunder." (emphasis in original)
 
 
 5
 On October 24, 1989, Halstead, acting as the executive of Administrative Benefits Compensation, Inc., borrowed $60,000 from Morrison and $50,000 from Neff. The two lenders were given La Jolla's "surety bonds," pre-dated October 12, 1989, by which La Jolla "irrevocably bound" itself to pay each of the lenders the amounts owing under the notes.
 
 
 6
 On October 31, 1989, one week after the loans had been made, Arm on behalf of La Jolla wrote Cooper cancelling the surety bonds on the purported ground that La Jolla had received no documentation on the loans. A copy of the cancellation was provided Halstead. No copy was sent to the two lenders.
 
 
 7
 On May 8, 1990, Arm on behalf of La Jolla wrote Halstead stating that he had received Halstead's request for extension of the sureties to Morrison and Neff. Arm continued: "the sureties are hereby extended under the same terms and conditions for an additional ninety (90) days from today." On August 22, 1990, Arm wrote Halstead on behalf of La Jolla again cancelling the bonds on the purported ground of receiving no documentation.
 
 
 8
 Meanwhile, the lenders had given Halstead an extension to repay the notes and when they were not paid had written La Jolla on August 6, 1989 asking that it make good on the bonds. Arm, on behalf of La Jolla replied that the bonds had been cancelled and that the May 8, 1990 extension was invalid for lack of consideration. Thereupon Morrison and Neff sued Arm in state court and obtained a judgment against Arm for $1 million, an amount that included RICO triple damages. Arm appealed this judgment.
 
 PROCEEDINGS IN THIS CASE
 
 9
 Arm filed a petition for bankruptcy under Chapter 7. Morrison and Neff brought an action to deny the dischargeability of his debt to them. The bankruptcy court held trial, made findings of fact, and ruled "that the debt owed to the plaintiffs by Fred H. Arm as a result of the actual fraud committed by Fred H. Arm and suffered by the plaintiffs renders that debt not dischargeable within the meaning of 11 U.S.C. § 523(a)(2)(A)." The amount of the debt was held to be determined by the state action still under appeal.
 
 
 10
 Arm appealed the judgment of the bankruptcy court to the BAP, which noted that Arm raised a new defense of usury that he had not raised in the bankruptcy court and so could not be entertained on appeal. On the principal issue, the BAP saw no reason to set aside the findings of fact of the bankruptcy court but did consider Arm's argument that he had not personally benefited from the fraud. The BAP concluded that, as Arm was "La Jolla's principal" and it had received a fee for issuing the bonds, his debt for the fraud was not dischargeable.
 
 
 11
 Arm appeals to this court.
 
 ANALYSIS
 
 12
 The badges of the fraud in which Arm was a principal are multiple: the bonds issued in blank and in advance of the loans guaranteed; the almost instant cancellation of the bonds; the extension contradicting the cancellation; the imaginative and wholly unverified list of assets attributed to the surety.
 
 Under 11 U.S.C. § 523(a):
 
 13
 (a) A discharge under ... this title does not discharge an individual debtor from any debt ...
 
 
 14
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
 
 
 15
 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ... 11 U.S.C. § 523(a)(2)(A).
 
 
 16
 We have authoritatively set out the conditions that must be met to prevent discharge under the statute. See In re Kirsh, 973 F.2d 1454, 1457 (9th Cir.1992); In re Rubin, 875 F.2d 755, 759 (9th Cir.1989). They are all met here, including:
 
 
 17
 1. That a representation of fact was made by the debtor, namely the statement made on the face of the surety bonds that La Jolla guaranteed the repayment of the principal and the statement that La Jolla had ample assets to carry out this guarantee.
 
 
 18
 2. That the representations were material, as Morrison and Neff testified.
 
 
 19
 3. That the debtor knew the representations to be false (here the bankruptcy court found that Arm was reckless in his assertions, which comes to the same thing).
 
 
 20
 4. That the debtor made the statements with the intention of deceiving the creditor, as Arm did in providing the blank surety bonds for Halstead's use with the lenders.
 
 
 21
 5. That the reliance of the creditors was justified, as the bankruptcy court found the two creditors, gullible though they appear, justified in taking the representations of La Jolla at face value; a finding we do not disturb.
 
 
 22
 6. That damage proximately resulted as it did here in Morrison and Neff not recovering their loans.
 
 
 23
 We make clear, what we have not held before, that the indirect benefit to the debtor from a fraud in which he participates is sufficient to prevent the debtor from receiving the benefits that bankruptcy law accords the honest person. See In re Ashley, 903 F.2d 599, 604 n. 4 (9th Cir.1990).
 
 
 24
 AFFIRMED.
 
 
 
 *
 The Honorable Floyd R. Gibson, Senior United States Circuit Judge for the Eighth Circuit Court of Appeal, sitting by designation