**In re Elizabeth WOOD and Richard D. Wood, Debtors.**

**AT & T UNIVERSAL CARD SERVICES CORP., Plaintiff,**

v.

**Elizabeth WOOD, Defendant.**

**Bankruptcy No. LA 96–44837–KM. Adversary No. AD 97–01126.**

United States Bankruptcy Court, C.D. California.

Oct. 10, 1997.

Edmund J. Sherman, Law Office of Robert S. Lampl, Woodland Hills, CA.

Ronald L. Brownson, Upland, CA.

## OPINION AFTER COURT TRIAL OF ADVERSARY PROCEEDING

KATHLEEN P. MARCH, Bankruptcy Judge.

### 1. INTRODUCTION:

This is a § 523(a)(2) nondischargeability adversary proceeding which raises some novel issues. Debtor Elizabeth A. Wood ("Debtor") filed a Chapter 7 bankruptcy on October 22, 1996. Plaintiff credit card company AT & T Universal Card Services Corp. ("Plaintiff") timely filed a 11 U.S.C. § 523(a)(2) adversary proceeding against Debtor, seeking to hold $7,818.66 of credit card charges made on the credit card issued to Debtor by Plaintiff nondischargeable in Debtor's chapter 7 case. That credit card had been issued to Debtor by Plaintiff on July 20, 1993, pursuant to a credit card agreement where Debtor represented that Debtor would pay charges incurred on the card per the terms of the card agreement.

The charges at issue total $7,818.66. These charges are for cash advances taken on the card between October 13, 1995 and November 30, 1995, totaling $6830, plus accrued interest and charges as of date of filing of the bankruptcy. The card's credit limit was $6900. Only $413.00 of payments was made on the card after these charges were made. The card was in good standing until these charges were made and left unpaid. A previous balance owed on the card of about $6400 had been paid down to $0 in June 1995.

This adversary proceeding was tried to the Court. Trial was held and completed on September 19, 1997. The court received in evidence those facts stipulated to in the joint pretrial conference order as undisputed, heard the testimony of Debtor, and received in evidence and reviewed certain documentary evidence. Admissibility of the documentary evidence was stipulated to by both sides.

The novel issues raised by this adversary proceeding arise from the following facts: Debtor, without Plaintiff's knowledge and without Plaintiff's consent, allowed debtor's sister, Catlin Crest ("Debtor's Sister") to "use" Debtor's credit card number to take the $6830 of cash advances here at issue. Debtor allowed Debtor's Sister to take a cash advance of $2000 so that Debtor's Sister could use the $2000 to pay two months of past due rent owed on Sister's business premises. Debtor allowed Debtor's Sister to take additional cash advances totaling $4830 to buy inventory to sell in Sister's business. After these charges were made, neither Debtor nor Debtor's Sister made any payments on any of these amounts, except for paying $413.00.

In the joint pretrial conference order governing trial of this adversary proceeding, and in her testimony at trial, Debtor stipulated that Debtor had no intention or ability to *herself* pay back any of these cash advances. Debtor (the sole witness called at trial by either side), testified that neither she nor her husband (not a signatory on the card and not a defendant in this adversary proceeding) had the ability to pay these charges back to Plaintiff. She further testified that she un-

derstood that she was legally liable to pay all charges made on the card, pursuant to the terms of her credit card agreement with Plaintiff, because she was the signatory and contracting party on the card.

Debtor testified that she was *counting on her Sister* to pay back the cash advances to Plaintiff, and testified that Debtor expected that Debtor's Sister would be able to do so from selling the inventory of Sister's business over the 1996 Christmas retail season.

The uncontroverted evidence at trial relating to the financial circumstances of Debtor's Sister, at the time the charges in issue were made and thereafter, was that Debtor's Sister was unemployed, was raising 4 children alone, was living on AFDC (Aid to Families With Dependant Children) payments (a form of welfare), and was only sporadically receiving about $150 a month from one of her several ex-husbands as child support. The Sister's business, which was described as a metaphysical bookstore/tattoo parlor/smoking paraphernalia shop, had only recently been started, and was already behind on its rent. However, the Debtor, Debtor's Sister, and a third person had previously operated a similar business, which Debtor and Debtor's Sister had sold to the third person in mid 1995, so both Debtor and Debtor's Sister had some experience with the type of business in question. Debtor's Sister had no credit cards of her own, but instead was using Debtor's credit to pay the rent/purchase inventory for Debtor's Sister's business. From all of these facts the Court inferred that Debtor's Sister was not creditworthy herself as a credit risk.

## 2. ISSUES PRESENTED:

The ultimate legal issue presented by this adversary proceeding is whether the $7,818.66 of credit card charges in issue are properly held nondischargeable in this bankruptcy under 11 U.S.C. § 523(a)(2)(A), because the Debtor was *reckless* in representing (through her credit card agreement) that Debtor would repay each of the charges in issue pursuant to the terms of Debtor's credit card agreement with Plaintiff.

The two defenses to this claim of recklessness in representing intent to repay are what are novel:

(1) Debtor argues that, though Debtor personally had no ability or intent to repay the charges, Debtor was not reckless in representing that Debtor would repay these charges, because Debtor expected that Debtor's Sister would repay these charges to Plaintiff per the terms of Debtor's credit card agreement with Plaintiff, and

(2) Debtor further argues that Debtor did not receive "... money, property, services, or an extension, renewal, or refinancing of credit ... obtained by ... a false representation ..." as required by 11 U.S.C. § 523(a)(2)(A), because it was Debtor's Sister, not Debtor, who received the cash advances.

## 3. HOLDING:

After trial, the Court rendered judgment in favor of Plaintiff AT & T Universal Card Service, Inc. and against Debtor Elizabeth A. Wood, holding the $7,818.66 of credit card charges made on the credit card issued to Debtor by Plaintiff nondischargeable in Debtor's Chapter 7 case pursuant to 11 USC § 523(a)(2)(A), based on the fact that Debtor was reckless in representing, through her credit card agreement with Plaintiff, that Debtor would repay the charges in issue pursuant to the terms of that credit card agreement.

## 4. ANALYSIS:

### a. Recklessness in Representing Intent to Repay Charges Made is Sufficient to Support Nondischargeability

The law is settled in this Circuit that *recklessness* by a Debtor in representing that a Debtor will repay credit card charges pursuant to the terms of the credit card agreement is sufficient to support holding unpaid charges nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). *In re Anastas,* 94 F.3d 1280, 1286 (9th Cir.1996). Reckless disregard for the truth of a representation satisfies the element that the debtor has made an

intentionally false representation in obtaining credit. *Id.*

### b. Debtor's First Defense is In Error

### i. Debtor's Sister Had No Objective Ability to Repay Charges, and Debtor Could Not Reasonably Believe Debtor's Sister Could Repay the Charges, Given the Dismal Financial Circumstances of Debtor's Sister

■■■ Debtor's first defense raises the question of whether Debtor was reckless in representing, through her credit card agreement, that Debtor would repay the charges in issue, when Debtor had no present ability or intent to **herself** repay the charges, but expected that **Debtor's Sister** would repay the charges. This defense is in error for two reasons.

First, on the uncontroverted evidence presented in this case, Debtor's Sister had no objective ability to repay the charges in question. As noted *supra*, Debtor's Sister was living on AFDC with 4 children, and working in a start up business that was already behind on its rent and lacked capital to buy inventory. Debtor's Sister was not creditworthy herself, as shown by the fact that Debtor's Sister had no credit cards of her own, but instead was living on AFDC and using Debtor's credit.

In light of these circumstances, Debtor could not have reasonably believed that Debtor's Sister would repay the charges in question. Consequently, it was reckless for Debtor to count on Debtor's Sister to repay the charges at issue. Further, the Court, having assessed the credibility of Debtor at trial, disbelieved Debtor's claim that Debtor expected Debtor's Sister would repay the charges at issue.

### (1) As a Matter of Law, It is Reckless to Rely on a Third Party to Repay Charges Made, Where the Third Party Has No Legal Obligation to Do So

However, there is an even more basic reason why this defense must fail, regardless of whether or not Debtor's Sister had the objective ability to repay the charges. This Court finds that Debtor's counting on Debtor's Sister to repay constituted a recklessness representation by Debtor that the charges on Debtor's card would be repaid by Debtor's Sister, as a matter of law, because Debtor's Sister did not have any contractual or other relationship with Plaintiff credit card company obligating Debtor's Sister to repay the charges.

Thus, even if one were to assume (contrary to all of the evidence in this case), that Debtor's Sister had the financial ability to pay the charges in question per the terms of the card agreement, Debtor's Sister had **no obligation to do so.** Debtor's sister was not a co-obligor on the card, nor a guarantor on the card. She had no contractual or other relationship whatsoever with Plaintiff. Though this appears to be an issue of first impression, this Court holds that it is reckless representation of ability to repay, as a matter of law, for a Debtor who lacks ability to himself/herself/itself repay charges, to count on a third person to repay those credit card charges, where the third person would only be acting as a "volunteer" in repaying the charges, without having any legal obligation to repay the charges in issue. After all, a volunteer can change his/her/its mind— on whim—about repaying. A third person with no legal obligation to repay may well decide not to repay, even if the third person has the resources to do so. Unlike a co-obligor or guarantor, such a "volunteer" cannot be compelled to pay if the "volunteer" decides not to.

### c. Debtor's Second Defense is In Error

### i. As a Matter of Contract Law, Debtor Took the Cash Advances, Not Debtor's Sister

■ Debtor's second defense—her argument that Debtor did not receive any benefit from use of the card, because Debtor's Sister received and used the cash advances in issue—is also in error as a matter of law. First, as a matter of contract law, it was Debtor, not Debtor's Sister who took the cash advances in issue. These advances were charged on Debtor's credit card, with Debtor's authorization. Thus, legally speaking, the charges were made *by* Debtor.

870

Debtor's Sister can be viewed as acting as Debtor's agent in taking the cash advances in question. *See* CAL.CIVIL CODE § 2330 (West 1996) (an agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal); 3 WITKIN, SUMMARY OF CALIFORNIA LAW (9th ed. 1987) Neg. Inst. § 100, p. 348 (if an authorized agent signs the instrument with the principal's name alone, this is effective to bind the principal on the instrument). Contractually speaking, Debtor took the cash advances and then lent or made a gift of the funds to Debtor's Sister. See 3 AM.JUR.2D, *Agency* § 261 (1987) (where an agent acts on behalf of a disclosed principal, and commits acts in the principal's name, such acts and contracts, within the scope of the agent's authority, are generally considered acts and contracts of the principal and are binding on the principal). Thus, Debtor is squarely within the express language of § 523(a)(2) quoted *supra*, Debtor "... received money, property, services, or an extension, renewal, or refinancing of credit ... obtained by ... a false representation ..."

### ii. Even if Debtor's Sister is Viewed as Taking the Cash Advances, Debtor Made a Gift of Those Cash Advances to Her Sister, and Making a Gift is a "Benefit" Debtor Received

■ However, even if Debtor's Sister were viewed as having made the cash advances in issue, then Debtor made a gift to her sister of those cash advances, because Debtor, not her Sister, was the party who was contractually obligated to repay the amounts taken. Debtor's making a gift constitutes Debtor receiving a benefit (the ability to make the gift) as the term "benefit" is used in § 523(a)(2). *See In re Ashley*, 903 F.2d 599, 604 (9th Cir.1990) (holding that it is not necessary that the property actually be gained for the direct benefit of the debtor, an indirect benefit to debtor constitutes "obtaining property" within the meaning of section 523(a)(2)(A)).

### iii. Result Debtor Contends for Would Eviscerate § 523(a)(2)

The reading of § 523(a)(2) that Debtor contends for would completely eviscerate that section, as well as ignoring the express language of the section, and ignoring contract law. For example, Debtor's reading would allow two people (they could be total strangers) to exchange their credit cards. Each would then take cash advances/charge goods on the other's cards until all the cards were charged up to the credit limit (or beyond if possible), and would pocket all the money and goods so obtained. Each person would then file bankruptcy, and would be able to discharge all of the charges so run up, because the other person (not the debtor), received the monies/goods obtained by using the cards, so the debtor did not receive a benefit from the use of the debtor's own cards.

### 5. CONCLUSION

Judgment on this adversary proceeding, for Plaintiff and against Debtor, has been signed by the Court this date as a separate document. This Opinion constitutes this Court's Findings of Fact and Conclusions of Law on this adversary proceeding.