In re Gale Ernest **WEILER**, Debtor.

**Universal Bank, N.A., Plaintiff,**

v.

**Gale Ernest Weiler, Defendant.**

**Bankruptcy No. 99–16494DAS.
Adversary No. 99–0794.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 3, 2000.

Perry E. Beitchman, Philadelphia, PA, for debtor.

Joseph Diorio, Philadelphia, PA, for plaintiff.

Mitchell W. Miller, Philadelphia, PA, for trustee.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA, for United States trustee.

## MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

The proceeding at issue ("the Proceeding") was commenced by UNIVERSAL BANK, N.A. ("the Bank") against GALE ERNEST WEILER ("the Debtor") on August 17, 1999, seeking to have a credit card indebtedness of the Debtor to the Bank in the amount of $5093.86 declared nondischargeable pursuant to 11 U.S.C. 523(a)(2)(A) and implicating 11 U.S.C. § 523(a)(2)(C) in light of the fact that the Debtor had allegedly made a $4000 credit purchase within sixty (60) days of his Chapter 7 bankruptcy filing on May 18, 1999. Although the Debtor answered the Complaint by denying nondischargeability on September 16, 1999, by the October 5, 1999, date of trial, the Debtor and his counsel had decided to settle the matter. After a continuance until November 9, 1999, to finalize the proposed settlement Stipulation, the parties appeared on that date for a discharge-hearing colloquy as described in *In re Rocco,* 239 B.R. 297, 300–01 (Bankr.E.D.Pa.1999).

At that time the parties presented a written Stipulation Regarding Adversary Complaint ("the Stipulation"), wherein the Debtor admitted every averment in the Bank's Complaint and in a set of Requests for Admission forwarded to the Debtor on August 25, 1999. They also indicated a desire to settle the Proceeding by the Debtor's payment of $2500 to the Bank. Although the terms of this oral stipulation had not been reduced to writing nor noticed to any interested party, the parties requested that we approve these terms that day.

In our following colloquy with the Debtor and counsel, we were informed that the $4000 credit advance in issue arose from a March 20, 1999, use of the Debtor's card by his cousin ("the Cousin") to obtain a motor vehicle. The Debtor indicated that he had fully expected the Cousin to pay, but the Cousin had not done so. Finding it difficult to characterize these circumstances as "fraud," we were disinclined to approve this settlement.

In the course of another similar colloquy on December 9, 1999, involving another debtor, Martha Ciambrello, the Bank's counsel indicated a desire to submit authority to us addressing its entitlement to a default judgment against Ciambrello. We decided to allow the Bank to also address the related issue of the conclusivity of the Stipulations in this case before finally deciding whether approval of the settlement in this Proceeding was appropriate.

Although the Bank failed to submit the authority as it requested, our independent research prompted us to render a decision, reported as *In re Weiler,* 1999 WL 1073134 (Bankr.E.D.Pa. Nov. 24, 1999) ("*Weiler I*"), addressing these issues as to both this case and *Ciambrello.* In *Weiler I,* we held that the Bank could be denied a default judgment in *Ciambrello* and that the instant Debtor could withdraw his admissions contained in the Stipulation. We

therefore disallowed approval of the settlement of the Proceeding and scheduled both the Proceeding and that in *Ciambrello* for trials on December 14, 1999.

After a December 14, 1999, trial, we ultimately rendered a decision in favor of Ciambrello, reported as *In re Ciambrello*, 1999 WL 1212179 (Bankr.E.D.Pa. Dec. 15, 1999). The instant Debtor, on that date, indicated a desire to withdraw from the Stipulation. The Bank's counsel stated that, if the Stipulation were vacated, he would need time to engage in pre-trial discovery. We therefore entered an Order requiring the Debtor to file any motion to withdraw from the Stipulation by December 16, 1999; scheduled a hearing on any such motion on December 22, 1999; and relisted the trial on February 1, 2000. Ultimately, the Debtor's motion to withdraw from the Stipulation was filed and granted in an agreement also allowing additional discovery. The trial of the Proceeding took place on February 1, 2000.

At the trial the Bank called, *inter alia*, the Debtor and the Cousin, identified as Dennis Marconi, as witnesses. It was established in their testimony that the Cousin resided with the Debtor and was an "authorized user" of the Debtor's credit card with the Bank, although the card was solely in the Debtor's name, rendering him the only obligor on it. The Debtor and the Cousin both testified that the Debtor regularly allowed the Cousin to use this particular credit card with the understanding that the Cousin would pay for the charges which he incurred on this account. Prior to March, 1999, the Cousin, who is a disabled former accountant whose income at that time was Social Security disability and part-time employment of about $650 monthly, used the card for modest purposes and always made the necessary payments.

The Debtor, by way of contrast, has steady employment from which he earns over $50,000 annually. However, he allowed a home to be foreclosed and, as of his filing date, owed over $70,000 on credit cards which he utilized himself, other than that of the Bank at issue.

On March 20, 1999, unbeknown to the Debtor, the Cousin used the card to make most of a "down payment" on a lease of a 1999 Chrysler Concorde. The Cousin did not make any payments towards the obligation on the credit card, although he testified that he has kept up the auto lease payments of $330.12 monthly. Since the Debtor left the mailings related to this account to the attention of the Cousin, whom he testified that he thought was jointly liable on the card with him, the Debtor further testified that he was unaware of the March 20, 1999, use of the card by the Cousin until July, 1999, when the Bank's counsel wrote to his counsel questioning him about this transaction.

In October, 1999, the Cousin himself filed bankruptcy, utilizing the same counsel as had the Debtor. The Bank raised no objection to dischargeability of this obligation in that case, although we note that the Bank was not therein listed as a creditor, and therefore was unaware of the Cousin's bankruptcy until it conducted his deposition after the deadline for filing such objections in that case in January, 2000.

 Although it reflects very negatively on the Cousin's actions, the foregoing scenario presents a situation where it is most difficult for the Bank to meet its burden of proving, by a preponderance of the evidence, as to the Debtor, all of the five well-known elements of a § 523(a)(2)(A) proceeding, see, e.g., Ciambrello, supra, at *1, *i.e.*,

" '(1) that the debtor made the representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations; and

(5) that the creditor sustained the alleged loss and damages as a proximate result of the representations having been made.'

*In re Naimo,* 175 B.R. 878, 881 (Bankr. E.D.Pa.1994), *aff'd,* 1995 WL 163598 (E.D.Pa. April, 1995), quoting *In re Cirineo,* 110 B.R. 754, 757–58 (Bankr. E.D.Pa.1990). (Other citations omitted).”

We also note that the Debtor's credible testimony that he did not know of the March 20, 1999, transaction until after he filed his bankruptcy case rebuts the 11 U.S.C. § 523(a)(2)(C) presumption of his fraud as to the transaction at issue because it occurred within sixty (60) days of the bankruptcy filing. *See In re Fulginiti,* 201 B.R. 730, 733–35 (Bankr.E.D.Pa.1996).

In the instant transaction, it is difficult to see how the Debtor could be chargeable with *any* of the five § 523(a)(2)(A) elements, because there were no misrepresentations on his part. *See Ciambrello,* at *4 (if misrepresentations by the debtor cannot be proven, the other four elements cannot be proven either).

The principal authority cited by the Bank in its support is, as it was in *Ciambrello, see id.* at *3–*4, *In re Wood,* 213 B.R. 866 (Bankr.C.D.Cal.1997). In *Wood* the court held the debtor liable for charges incurred by her sister, a single parent of four children on welfare, for use of the debtor's credit card in the amount of $7818.66 to finance the sister's "head shop," *Id.* at 867–68. In that case, the court rejected the debtor's defenses that (1) she had made no personal representations of her own ability or intention to pay; and (2) she had obtained no personal benefit from the use of the card, *Id.* at 868–70.

Our research indicates that, other than *Ciambrello,* no other case has even so much as cited the *Wood* case as support for a decision. The most factually analogous case to *Wood* decided by this court was *Naimo, supra.* In that case we refused to hold a debtor liable for purchases of electronic goods made on her credit card by her fiancé in order that he could resell the goods for cash. 175 B.R. at 879–80. The fiancé was ultimately proven to be a criminal who was taking advantage of the debtor. *Id.*

In *Naimo* we agreed with the *Wood* court's conclusion, 213 B.R. at 869–70, that the cardholder need not directly benefit financially from a credit card's usage to be held liable under § 523(a)(2) for its misuse. *Id.* at 880–81. However, we implicitly rejected the *Wood* court's holding that, whenever a cardholder allows a third party with no obligation to repay to use his or her credit card, the cardholder is *per se* liable for reckless behavior. 213 B.R. at 869. Thus, in *Naimo* we found the debtor to have acted in good faith and not to have been reckless in allowing her trusted fiancé to utilize her credit card, even in highly suspicious transactions. 175 B.R. at 882. We observed that the retailer, who was the card issuer, could have easily flagged these unusual transactions and protected itself. *Id.*

■ The same reasoning that we applied in *Naimo* applies here. Indeed, we find credible the Debtor's testimony that he did not monitor the Cousin's transactions on his card or know about the March 20, 1999, transaction because the Cousin had never abused his access to the card before *and* because he believed that the Bank considered the Cousin a co-holder of the card, since it issued a card bearing his name for the account to the Cousin. As many motor vehicle leases do not require a down payment, the presence of the new Concorde, of which there is no evidence of any use by the Debtor, did not constitute a "red flag" of misuse of the Bank's card to the Debtor. There was no evidence here that, unlike the *Naimo* debtor, the Debtor even knew of the Cousin's card use at issue, let alone that he was a party benefitting from or closing his eyes to the transaction.

Indeed, we find the *per se* rule of *Wood* misplaced because we believe that the card

issuer is equally as reckless as the cardholder in condoning the practice of allowing a third party to attain the status of an authorized user of a card with no obligation to repay. *Cf. Cirineo, supra,* 110 B.R. at 759–62 (creditor's own practices must be considered in assessing credit card fraud and the debtor is only chargeable with fraud when the debtor knows or has reasons to know a charge will not be repaid). Here, moreover, the Debtor, *unlike* the Bank, believed that the Cousin was at least co-liable to pay for his usage.

Since we found no actual fraud nor reckless behavior on the part of the Debtor, a judgment in his favor follows. Our within order grants the parties' requests to leave open the issue of the Bank's § 523(d) liability and the Debtor's liability for alleged improper conduct. We do confess that we can recall no improper conduct by the Debtor beyond his possible acquiescence in the ill-advised Stipulation and settlement. These facts would appear to mitigate a § 523(d) claim, at least for services prior to November 9, 1999. *Compare Rocco, supra,* 239 B.R. at 301–04.

### ORDER

AND NOW, this 3rd day of February, 2000, after the trial of February 1, 2000 of the above-captioned proceeding ("the Proceeding"), it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of GALE ERNEST WEILER ("the Debtor") and against UNIVERSAL BANK, N.A., ("the Bank").

2. The indebtedness of the Debtor to the Bank is DECLARED DISCHARGEABLE.

3. The parties are authorized to file any post-trial motions, including any motion under 11 U.S.C. § 523(d) or motion for sanctions against each other for any matters arising during the administration of the Proceeding, on or before February 11, 2000, and list same for hearings on

WEDNESDAY, MARCH 1, 2000, AT 9:30 A.M. and shall be held in Bankruptcy Courtroom No. 1, Second Floor, 900 Market Street, Philadelphia, PA 19107.