In re Paul A. BILZERIAN, Debtor.

HSSM # 7 LIMITED PARTNERSHIP, Plaintiff,

v.

Paul A. BILZERIAN, Defendant.

Bankruptcy No. 91–10466–8P7.
Adv. No. 92–573.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 16, 1993.

Andrew M. Brumby, Shutts & Bowen, Orlando, FL, for plaintiff.

Paul A. Bilzerian, pro se.

**ORDER ON HSSM # 7 LIMITED PARTNERSHIP'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND PAUL A. BILZERIAN'S MOTION FOR JUDGMENT ON THE PLEADINGS OF COUNTS II AND III (SIC) AND MOTION FOR SUMMARY JUDGMENT OF COUNT I**

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is a twelve

(12) count Complaint filed by HSSM #7 Limited Partnership (HSSM) seeking a determination that the debt due and owing by Paul A. Bilzerian (Debtor) to HSSM is a nondischargeable debt. In addition, HSSM seeks a denial of the Debtor's right to a discharge. HSSM filed a Motion for Partial Summary Judgment on Counts I, II and III and the Debtor filed a Motion for Judgment on the Pleadings on Counts II and III (sic) and Motion for Summary Judgment of Count I. In their Motions, both HSSM and the Debtor claim that there are no genuine issues of material facts in Counts I, II, and III, and based on those facts, each party is entitled to judgment as a matter of law in their respective favor. The facts relevant to the Motions under consideration, as they appear from the record, are indeed without dispute and do not present any genuine issues of material facts. Thus, the controversy is ripe for determination as a matter of law. The undisputed facts are as follows:

On January 5, 1990, HSSM commenced a lawsuit against Bilzerian and Bicoastal Financial Corporation (BFC) in the United States District Court for the Northern District of Texas. In its Fifth Amended Complaint, HSSM alleged that Bilzerian made a series of misrepresentations to HSSM to induce HSSM to invest $20,400,000.00 as a limited partner in Suncoast Partners Limited Partnership (Suncoast). In particular, HSSM alleged that Bilzerian and BFC obtained HSSM's investment in Suncoast and its agreement to enter into the Suncoast Limited Partnership Agreement (Suncoast Agreement) by a series of falsehoods. These misrepresentations included a representation by Bilzerian concerning his skill and expertise in legitimate securities transactions and his intentions to live up to a repurchase agreement with HSSM.

In due course, the case was tried by a jury which, on July 30, 1990, returned a verdict in favor of HSSM and against Bilzerian and BFC, jointly and severally. On April 2, 1991, the District Court entered a Judgment on the verdict. In its Judgment, the District Court determined that Bilzerian and BFC were guilty of actual fraud, rescinded the Suncoast Agreement based on fraud in the inducement, and ordered Bilzerian and BFC jointly and severally to pay HSSM $19,839,000.00 in compensatory damages, plus $1,224,000.00 in punitive damages. On April 11, 1991, the District Court entered an Amended Judgment correcting a clerical error in the calculation of the prejudgment interest. The recalculated Judgment was for $26,861,312.78 in compensatory damages and prejudgment interest, and $1,224,000.00 in punitive damages. The recalculated Judgment further provided that the post-judgment interest shall accrue at 6.46% per annum. In addition, by an order dated February 24, 1992, the District Court awarded HSSM $20,006.75 in costs.

On February 24, 1992, the District Court filed its Findings of Fact and Conclusions of Law. The District Court adopted all but one of the findings of the jury. The District Court refused to adopt the jury's answer to Question No. 5, in which the jury determined that there was a market value for HSSM's interest as of December 31, 1988, in Suncoast. The District Court's Judgment was appealed and on March 9, 1993, the Fifth Circuit affirmed the District Court's Judgment.

On August 5, 1991, Bilzerian and BFC each filed their voluntary Petitions For Relief under Chapter 11 of the Bankruptcy Code. On October 22, 1991, after the United States Supreme Court denied certiorari in Bilzerian's conviction for securities fraud, and Bilzerian was incarcerated, his Chapter 11 case was converted to a Chapter 7 case. James C. Orr (Trustee) is the duly appointed and acting Trustee of Bilzerian's estate.

On March 16, 1993, HSSM filed a Motion for Partial Summary Judgment on Counts I, II and III of its Complaint. In its Motion, HSSM contends that Bilzerian is collaterally estopped by the District Court Judgment from having this Court retry the following facts and issues: (1) obtaining money by false pretenses, representation, or actual fraud (Count I, § 523(a)(2)(A)); (2) fraud or defalcation while acting in a fiduciary capacity (Count II, § 523(a)(4)); and (3) willful and malicious injury by Bilzerian to another entity or to the property of another entity (Count III, § 523(a)(6)).

On April 14, 1993, Bilzerian filed an Opposition to HSSM's Motion for Partial Summary Judgment. Bilzerian claims that collateral estoppel cannot be applied in this case because several issues in this case were not actually litigated in the District Court case. Specifically, Bilzerian contends that, in order to prevail under § 523(a)(2)(A), the record must establish that the creditor sustained an actual monetary loss as a result of the alleged misrepresentations, and this record is devoid of any evidence of this because: (1) the District Court in Texas did not adjudicate that Bilzerian "obtained any money from HSSM"; (2) Bilzerian's misrepresentations were not in writing; (3) mere silence on the part of Bilzerian did not establish the fact that he willfully concealed or omitted material facts; and (4) the jury, in rescinding the contract, did not find that HSSM suffered any monetary loss. In order to prevail under § 523(a)(4), Bilzerian contends that the record must show that he was acting in a fiduciary capacity, and while acting in that capacity committed either fraud or defalcation or was guilty of embezzlement or larceny. Bilzerian contends that it is clear from this record that: (1) Bilzerian could not have been acting as a fiduciary vis-a-vis HSSM prior to the execution of the Suncoast Agreement; and (2) there is no allegation in the Complaint and there is nothing in the record that even refers to an act of embezzlement or larceny. Finally, to prevail under § 523(a)(6), Bilzerian contends that the record must establish that Bilzerian did willfully and maliciously cause injury to HSSM or to the property of HSSM. Bilzerian claims HSSM failed in this respect because: (1) the District Court in Texas determined that Bilzerian acted only recklessly, a finding which falls short of the willful and malicious standard required by § 523(a)(6); (2) the jury didn't determine that HSSM suffered any monetary loss when the contract was rescinded; (3) the issue of malice was not even involved in the Texas case; and (4) there is no allegation of injury to the property of HSSM in the Complaint.

On April 14, 1993, Bilzerian filed a Motion for Judgment on the Pleadings directed to the claims of HSSM set forth in Counts II and III and Motion for Summary Judgment directed to the claim in Count I. In its Motion, Bilzerian alleged, setting forth the same contentions asserted in his Opposition to HSSM's Motion for Partial Summary Judgment, that he was entitled to: (1) Judgment on the pleadings of Counts II and III; (2) Judgment on Count I; or, in the alternative, (3) dismissal of all three Counts for failure to state a cause of action.

■ The application of collateral estoppel or issue preclusion is generally recognized in litigation involving the question of dischargeability of a specific debt owed by the Debtor. *In re Halpern*, 810 F.2d 1061 (11th Cir.1987). In order for collateral estoppel to apply, four elements must be established: (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the Judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case. *In re St. Laurent*, 991 F.2d 672 (11th Cir.1993).

■ In light of the record and the undisputed facts, this Court is satisfied that it is appropriate to dispose of most of the issues under consideration as a matter of law. For the sake of clarity, this Court shall deal with the respective contentions of the parties concerning each of the issues in Counts I, II and III in reverse order. First, to prevail on the claim set forth in Count III, HSSM must establish by the record that: (1) the District Court determined that Bilzerian committed a willful and malicious act which injured HSSM or the property of HSSM; and (2) the Texas litigation established, with the requisite degree of proof, all operating elements of a non-dischargeable claim pursuant to § 523(a)(6) of the Bankruptcy Code, which provides:

(a) a discharge under Section 727 ... of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

For the act to be malicious, it must result in an injury arising from a willful act done wrongfully and without just cause or excuse. See *In re Greer*, 21 B.R. 763 (Bankr.D.Ariz. 1982).

■ In the Texas litigation, the jury was specifically instructed that it could only award punitive damages if Bilzerian acted willfully, intentionally, or with callous and reckless indifference to the rights of HSSM. Question 2 to the Court's Instructions to the Jury (Exh. B to the Complaint) states:

> What amount of punitive damages, if any, do you find should be paid by Bicoastal Financial Corporation as a result of its fraud against HSSM? Answer in dollar and cents, if any.

### Instructions

The law permits the jury, under certain circumstances, to award punitive damages for the limited purpose of punishing some misconduct and serving as a warning to others not to engage in such misconduct.

Punitive damages may be awarded only *if you find that the acts or omissions of Mr.* Bilzerian which caused actual damages to HSSM were done willfully, intentionally or with callous and reckless indifference to the rights of HSSM.

The amount of punitive damages must be based on reason, taking into account all the circumstances, including the nature of the wrong and any aggravating and mitigating circumstances that may be shown. Whether or not to award any punitive damages is a matter exclusively within the discretion of the jury. If you award punitive damages, you also may consider the attorney's fees incurred by Plaintiff which are the sum of $850,000.00.

Based on these Instructions to the Jury, the jury awarded HSSM punitive damages in the amount of $1,224,000.00. It should be noted, however, that a punitive damage award pursuant to these instructions does not necessarily mean that the jury found that Bilzerian committed a willful and malicious act as required to prevail under § 523(a)(6). This is so because under the instructions, the jury could have determined that Bilzerian acted with "reckless disregard", a standard which

is no longer the applicable standard. The exception in § 523(a)(6) applies only to the debtor's conduct which is willful and malicious and causes injury to another person or to the property of another person. To the extent that *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they no longer represent the proper standard. H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Inasmuch as the jury award failed to distinguish under which standard of proof it awarded punitive damages, this Court is satisfied that it would be inappropriate to come to a final resolution of Count III without further evidence being presented to this Court. Therefore, HSSM's Motion as to Count III should be denied, and Bilzerian's Motion as to Count III should be denied because there remains a genuine issue of material fact which has to be tried.

To prevail on the claims set forth in Count II, the record must establish that the District Court determined the following: (1) Bilzerian was acting in a fiduciary capacity; and (2) while acting in that fiduciary capacity, Bilzerian committed either fraud or defalcation or was guilty of embezzlement or larceny. If both of these elements are established, the liability should be excepted from the overall protection of the general discharge pursuant to § 523(a)(4). The Supreme Court has consistently held that the term "fiduciary" is not to be construed expansively, but instead is intended to refer only to "express" or "technical" trusts. *See Chapman v. Forsyth*, 43 U.S. (2 How) 202, 11 L.Ed. 236 (1844); *Upshur v. Briscoe*, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891); *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). Unfortunately, the Supreme Court has not considered this issue since the *Davis* case, leaving the lower courts to struggle with the concept of "express" or "technical" trusts.

Initially, the lower courts construed this Section to cover only situations where there was a voluntary, express trust between the parties and not a trust created by the opera-

tion of law. See *Chapman,* supra. In addition, it has been generally recognized that the trust relationship had to exist prior to the act creating the debt and without reference to that act. *Reed v. Angelle,* 610 F.2d 1335 (5th Cir.1980). In other words, the basis of a trust which created the fiduciary relationship must have been ex contractu and not as a result of wrongdoing. *Id.*

The difficulty in interpreting § 523(a)(4) was caused by the development of statutory laws which, in certain situations, created an express trust relationship for policy reasons. These Statutes were usually enacted to protect specific individuals, such as principals against the conduct of agents. For example, O.C.G.A. § 33–23–79 created a fiduciary relationship between insurance companies and their agents concerning premiums collected by the agents for policies insured by the insurance companies. A similar Statute was enacted in Florida. See Fla.Stat.Ann. § 626.561 (1993). There have also been Statutes governing the construction industry by declaring that funds received by a contractor were trust funds held for the benefit of suppliers, labor and material. See Neb.Rev. Stat. § 52–123 (1974); N.M.Stat.Ann. § 67–35–26 (1953).

Neither independent research nor research of counsel located any Eleventh Circuit cases which specifically dealt with this problem. The most recent case of *Matter of Cross,* 666 F.2d 873 (5th Cir.1982), decided under the Bankruptcy Act of 1898, involved a debtor who, acting as an officer of a corporation, was claimed to have been guilty of defalcation by failing to pay subcontractors and suppliers on a construction job to be completed by the officer's corporation. In *Cross,* the Court of Appeals concluded, relying on *Angelle v. Reed,* supra, that the exception to discharge required that there had to be a pre-existing fiduciary duty owed by the debtor to the creditor, and not just a duty owed by the debtor to his employer, the corporation. Thus, the debt was found to be dischargeable because there were no pre-existing contractual or statutory fiduciary duties imposed on the individual officer of the corporation vis-a-vis the creditor.

Recently, the District Court for the Northern District of Georgia, in the case *Quaif v. Johnson,* 4 F.3d 950 (11th Cir.1993) rejected the contention of the Debtor that no trust was created by O.C.G.A. § 33–23–79 because the Statute did not require the res of the trust created by the Statute to be separately identified. In its opinion, the District Court, which was affirmed on appeal by the Eleventh Circuit, conceded that a separation of funds is necessary in some cases to establish the existence of a technical trust. See *Matter of McCraney,* 63 B.R. 64, 67 (Bankr. N.D.Ala.1986); *In re Kelley,* 84 B.R. 225, 230 (Bankr.M.D.Fla.1988). A separation of funds, however, was not required in *Quaif.* In *Quaif,* all premiums collected by the debtor, not only on policies issued by the Plaintiff, but also by other insurance companies, were not maintained in segregated accounts. However, they were placed in a single bank account that was separate from the ordinary operating account of the Debtor and were not commingled with the Debtor's funds. The District Court concluded that this was sufficient "segregation" to satisfy the requirement of a trust, and a fiduciary duty was in fact created by the Statute even prior to the act of defalcation.

■ The record in this case leaves no doubt that there was neither an express or technical trust created by contract between Bilzerian and HSSM, nor was one created by Statute. The negotiations entered into between Bilzerian and HSSM were nothing more than a simple commercial transaction between sophisticated business people, and it is obvious that there was neither an express nor technical trust established by the execution of the Agreement. This being the case, it is unnecessary to consider whether or not the conduct of Bilzerian amounted to a defalcation which, for the purposes of § 523(a)(4), does not have to rise to the level of fraud, embezzlement, or even misappropriation. *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2nd Cir.1937); *See also In re McCormick,* 70 B.R. 49, 51 (Bankr. W.D.Pa.1987); *American Ins. Co. v. Lucas,* 41 B.R. 923 (W.D.Pa.1984). Therefore, this Court is satisfied that it is appropriate to deny HSSM's Motion as to Count II, grant Bilzerian's Motion and declare the debt owed

by Bilzerian to HSSM to be dischargeable based on § 523(a)(4).

This leaves for consideration the claim of HSSM set forth in Count I based on § 523(a)(2)(A) of the Bankruptcy Code. To prevail on this claim, HSSM must establish by the record that the verdict of the jury and the Judgment entered on the same clearly found that: (1) Bilzerian himself obtained money, property, services, or an extension, renewal, or refinancing of credit by false pretenses, a false representation, or actual fraud; and (2) HSSM suffered a monetary loss as a result of Bilzerian's false pretenses, misrepresentations, or actual fraud.

 In the District Court case, the jury found that "HSSM did prove" that Bilzerian and BFC fraudulently induced HSSM to execute the Suncoast Agreement. Question 1 of the Court's Instructions to the Jury (Exh. B to the Complaint) states:

Do you find from a preponderance of the evidence that Paul Bilzerian and Bicoastal Financial Corporation fraudulently induced HSSM to execute the Suncoast Limited Partnership Agreement?

Answer "HSSM did prove" or "HSSM did not prove" as to each Defendant

### Instructions

In order to establish that it was defrauded by Defendants, HSSM must prove: (1) that a material representation of fact, either past or present, was made by Mr. Bilzerian; (2) that it was false; (3) that when the misrepresentation was made, Mr. Bilzerian knew it was false or made it recklessly without any knowledge of its truth; (4) that Mr. Bilzerian made the misrepresentation with the intention that HSSM act on it; and (5) that HSSM acted in reliance on the representation. If you find that HSSM acted in reliance on the representation, you also must find that the reliance was reasonable. You are further instructed that a promise to perform some act in the future also can constitute a fraudulent misrepresentation if at the time the promise was made, it was made with the present intent of not performing and with the purpose of deceiving the party to

whom the promise was made. Silence may be as misleading as a positive misrepresentation of existing facts; thus, Mr. Bilzerian is under a duty to disclose the whole truth where partial disclosure is itself, a false representation. Future predictions or expressions of personal opinion do not serve as a basis for fraud unless made with the intent to deceive or to conceal facts known to be untrue.

You are further instructed in answering Questions 1A and 1B that if an agent's, employee's, corporate officer's or partner's fraudulent acts are done in the course and scope of employment, or if they are in furtherance of the principal's, employers, corporation's or partnership's business, the principal, employer, corporation or partnership also may be found liable to HSSM. The act of an agent, employee, corporate officer or partner may be within the course and scope of his employment even though there was in fact no benefit to the employer. You are further instructed that if an agent, employee, corporate officer or partner commits fraud while acting within the scope of his employment, he may be individually liable for damages to HSSM even though the principal, employer, corporation or partnership is also liable.

Based on these instructions, the jury found Bilzerian and BFC "guilty of actual fraud" and ordered them to pay HSSM compensatory damages, punitive damages, pre-judgment and post-judgment interest, and all costs incurred by reason of the trial. There is nothing in this record, or the record of the Texas litigation, to establish the fact that Bilzerian individually obtained any money or property from HSSM. In fact, HSSM's entire investment was received by Suncoast, not Bilzerian. For a debt to be deemed nondischargeable pursuant to § 523(a)(2)(A), the Debtor himself must obtain the money, property, services, or an extension, renewal, or refinancing of credit by misrepresentation, false pretenses or actual fraud. See *In re Chavez*, 140 B.R. 413, 420 (Bankr.W.D.Tex.1992); *In re Burgess*, 955 F.2d 134, 140 (1st Cir.1992); *In re Rifkin*, 142 B.R. 61 (Bankr.E.D.N.Y. 1992); *In re Jacobs*, 54 B.R. 791 (Bankr. E.D.N.Y.1985). Inasmuch as Bilzerian never received any money, property, services, or an

extension, renewal, or refinancing of credit from HSSM, this Court is satisfied that it is appropriate to deny HSSM's Motion as to Count I, grant Bilzerian's Motion and declare the debt owed by Bilzerian to HSSM to be dischargeable based on § 523(a)(4).

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion for Partial Summary Judgment as to Counts I, II and III filed by HSSM #7 Limited Partnership against Paul A. Bilzerian be, and is hereby, denied. It is further

ORDERED, ADJUDGED AND DE-CREED that the Motion for Judgment on the Pleadings on Counts II and III and Motion for Summary Judgment of Count I filed by Paul A. Bilzerian against HSSM #7 Limited Partnership be, and is hereby, granted in part and the debt owed by Bilzerian to HSSM based on §§ 523(a)(2)(A) and (a)(4) set forth in Counts I and II respectively is hereby determined to be dischargeable. It is further

ORDERED, ADJUDGED AND DE-CREED that the Motion for Judgment on the Pleadings on Counts II and III and Motion for Summary Judgment on the claim asserted in Count I filed by Paul A. Bilzerian against HSSM #7 Limited Partnership be, and is hereby, denied in part and the claim of non-dischargeability based on § 523(a)(6) set forth in Count III shall be scheduled for a pre-trial conference before the undersigned in Courtroom A, 4921 Memorial Highway, Tampa, Florida, 33634, on November 16, 1993, at 9:00 am.

DONE AND ORDERED.