United States Court of Appeals,

Eleventh Circuit.

No. 95-2988

Non-Argument Calendar.

In re Paul A. BILZERIAN, Debtor.

HSSM # 7 LIMITED PARTNERSHIP, Plaintiff-Appellee,

v.

Paul A. BILZERIAN, Defendant-Appellant.

Dec. 3, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 93-2149-Civ-T-23C), Harvey E. Schlesinger, Judge.

Before KRAVITCH, COX and DUBINA, Circuit Judges.

PER CURIAM:

In this case, the district court reversed the bankruptcy court's holding that a fraud judgment debt owed by appellant Paul A. Bilzerian ("Bilzerian") to appellee HSSM # 7 Limited Partnership ("HSSM") was dischargeable. Bilzerian, a Chapter 7 debtor, appeals *pro se* the district court's reversal of the bankruptcy court's holding. Because we conclude that Bilzerian received a benefit from his fraud, and that collateral estoppel prevents relitigation of the necessary elements of fraud under 11 U.S.C. § 523(a)(2)(A), we affirm the district court's judgment.

## I. BACKGROUND

HSSM brought suit against Bilzerian and Bicoastal Financial Corporation ("BFC") in the United States District Court for the Northern District of Texas. In its fifth amended complaint, HSSM alleged that Bilzerian made a series of misrepresentations to HSSM

to induce HSSM to invest $20.4 million in Suncoast Partners Limited Partnership ("Suncoast"). Such representations involved Bilzerian's skill and expertise in securities transactions and his agreement to repurchase HSSM's interest in Suncoast. The latter agreement, known as "the put," entailed Bilzerian's contracted agreement to purchase HSSM's interest in Suncoast at HSSM's election. The district court in Texas found that this arrangement:

> was a specifically negotiated contract provision resulting from the clear understanding of the parties that plaintiff HSSM ... needed the opportunity to have liquidity from its investment in Suncoast ... on an annual basis or it would not make the investment.... Without Section 5.6 in the partnership agreement, HSSM would not have become a partner in Suncoast.

Findings of Fact and Conclusions of Law, BR42, Ex. F at 1-2.

The case was tried to a jury, which answered special interrogatories and returned a verdict in favor of HSSM and against Bilzerian and BFC, jointly and severally. The Texas district court entered judgment on the jury's verdict, and concluded that Bilzerian and BFC were guilty of actual fraud. Moreover, the district court rescinded the partnership agreement and ordered Bilzerian and BFC, jointly and severally, to pay HSSM $19.839 million in compensatory damages, $1.224 million in punitive damages, and post-judgment interest to accrue at the rate of 6.46 percent per annum. The court subsequently amended its judgment to correct a clerical error. The amended judgment awarded $26,861,312.78 in compensatory damages and prejudgment interest, and the punitive damage award and rate of post-judgment interest remained the same. On February 24, 1992, the district court filed its Findings of Fact and Conclusions of Law. The Fifth Circuit

Court of Appeals affirmed the district court's judgment.

On August 5, 1991, both Bilzerian and BFC filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Code").  After the United States Supreme Court denied *certiorari* in another case involving Bilzerian's conviction for securities fraud, Bilzerian's bankruptcy case was converted to one under Chapter 7.  HSSM filed a Complaint To Determine Dischargeability Of Debt and Objecting to Discharge in bankruptcy court against Bilzerian.  HSSM objected to the discharge of the judgment debt Bilzerian owed to HSSM, as well as to Bilzerian's general discharge.  Count one of the adversary complaint—the only count relevant to this appeal—alleged that Bilzerian's judgment debt to HSSM was a debt for money obtained by actual fraud and was thereby excepted from discharge under 11 U.S.C. § 523(a)(2)(A).[1]

HSSM filed a motion for summary judgment on count one alleging that, under principles of collateral estoppel, the debt arising from the Texas judgment was nondischargeable because it was obtained by fraud.  Bilzerian filed a cross motion for summary judgment arguing, among other issues, that collateral estoppel should not apply because the Texas court did not actually litigate several issues, such as whether Bilzerian had *directly* received any money or property as a result of the alleged fraud, and whether HSSM had failed to show that it sustained a loss as a result of Bilzerian's false representations.  The bankruptcy court concluded that in order for a debt to be excepted from discharge under §

---

[1]All the other counts alleged in HSSM's adversary complaint have been dismissed or resolved.

523(a)(2)(A), "the Debtor himself must obtain the money, property, services ... by misrepresentation, false pretenses or actual fraud." *HSSM # 7 Limited Partnership v. Bilzerian (In re Bilzerian),* 162 B.R. 583, 589 (Bankr.M.D.Fla.1993). Accordingly, the bankruptcy court granted summary judgment in favor of Bilzerian because it found that the evidence in the Texas case did not show that Bilzerian *individually* obtained any money or property from HSSM. On appeal the district court rejected the bankruptcy court's interpretation of § 523(a)(2)(A) and concluded that the provision requires only that the debtor receive some benefit, even if indirectly. The district court found that Bilzerian received a benefit from HSSM's investment in his business venture and that the issue of fraud was actually and necessarily litigated in the Texas case such that collateral estoppel precluded litigating the fraud issue again in the bankruptcy dischargeability proceeding. Bilzerian then perfected this appeal.

## II. ISSUES

We address the following issues on appeal:

(1) whether a debtor, who did not individually receive the fruits of his or her fraud, but nevertheless received some benefit, has *obtained* "money, property, services, or an extension, renewal or refinancing of credit" for purposes of 11 U.S.C. § 523(a)(2)(A); and

(2) whether collateral estoppel prevents relitigation of elements necessary to render Bilzerian's debt excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

## III. STANDARD OF REVIEW

Because the district court functions as an appellate court in reviewing bankruptcy court decisions, this court is the second appellate court to review bankruptcy court cases. *Haas v. I.R.S.*

*(In re Haas),* 31 F.3d 1081, 1083 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115, S.Ct. 2578, 132 L.Ed.2d 828 (1995). This court reviews determinations of law, whether from the bankruptcy court or the district court, *de novo. Id.* By contrast, this court reviews the bankruptcy court's factual findings under the clearly erroneous standard. *Id.*

## IV. ANALYSIS

*A. 11 U.S.C. § 523(a)(2)(A) Exception From Discharge*

The issue of exception of debts from discharge is governed by 11 U.S.C. § 523. Section 523(a)(2)(A) provides that "[a] discharge [in bankruptcy] does not discharge an individual debtor from any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent *obtained* by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" (emphasis added). This appeal involves the meaning of the word "obtain" in § 523(a)(2)(A).

Bilzerian contends that in order for the exception to discharge found in § 523(a)(2)(A) to apply, a debtor must *directly* obtain the money or property in question. Thus, he concludes that since he was not the direct recipient of HSSM's investment, § 523 is inapplicable to him. The bankruptcy court accepted Bilzerian's argument.[2] The district court, however, disagreed with this rather

---

[2]The bankruptcy court found as follows:

> There is nothing in this record, or the record of the Texas litigation, to establish the fact that *Bilzerian individually obtained* any money or property from HSSM. In fact, HSSM's entire investment was received by Suncoast, not Bilzerian. *For a debt to be deemed*

narrow reading of § 523(a)(2)(A).

This issue is one of first impression in the Eleventh Circuit. Three views have emerged regarding the issue of whether a debtor must personally receive money before the exception to discharge of § 523(a)(2)(A) can apply. The first view, which was adopted by the bankruptcy court and is the narrowest, requires that the debtor personally receive the fruits of the fraud.[3] The second view, which was adopted by the district court, is termed the "receipt of benefits" theory. This theory requires that the debtor gain a *benefit* from the money that was obtained by fraudulent means.[4] A third view, which is the broadest, requires simply that

> *nondischargeable pursuant to § 523(a)(2)(A), the Debtor himself must obtain the money, property, services or an extension, renewal or refinancing of credit by misrepresentation, false pretenses or actual fraud.* Inasmuch as Bilzerian never received any money, property, services, or an extension, renewal or refinancing of credit from HSSM, this Court is satisfied that it is appropriate to deny HSSM's Motion as to Count I ...

*Bilzerian,* 162 B.R. at 589-90 (citations omitted) (emphasis added).

[3]This view originated in *Rudstrom v. Sheridan,* 122 Minn. 262, 142 N.W. 313 (1913). The *Rudstrom* court found that: "In order ... to bring the statute into operation, and prevent the full discharge of the bankrupt, it should be made to appear that property of some kind, tangible or intangible, was thus obtained by him." *Id.* 142 N.W. at 314. However, as the bankruptcy court noted in *Simmons v. Wade (In re Wade* ), 43 B.R. 976 (Bankr.D.Colo.1984), the creditor in *Rudstrom* suffered no loss and thus failed to prove the elements of fraud; therefore, this language in *Rudstrom* was dictum. *Id.* at 980-81.

[4]We also note, as did the district court, that Bankruptcy Chief Judge Paskay previously advocated the "receipt of benefits" theory:

> According to one view, unless the debtor actually obtained money or property for himself through false representations, the debt remains dischargeable. The

a debtor obtain money by fraudulent means such that a debtor does not necessarily have to receive money personally or receive any benefit at all.[5]

The bankruptcy courts diverge on this question; however, the three circuit courts that have considered the issue have rendered decisions favoring the "receipt of benefits" theory. *See BancBoston Mortgage Corp. v. Ledford (In re Ledford),* 970 F.2d 1556 (6th Cir.1992), *cert. denied,* 507 U.S. 916, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993); *Luce v. First Equip. Leasing Corp. (In re Luce),* 960 F.2d 1277 (5th Cir.1992); *Ashley v. Church (In re Ashley),* 903 F.2d 599 (9th Cir.1990). We agree with our sister circuits that the "receipt of benefits" theory is the more well-reasoned approach.

The Ninth Circuit's opinion in *Ashley* is the most analogous to the instant case. In *Ashley,* the debtor was involved in a plan to finance, establish, and develop machine shops. Like Bilzerian, the

---

better view, however, appears to be that the debtor need not actually procure the money or property for himself. If the debtor benefits in some way from the property obtained through his deception, the debt is nondischargeable.

*Century First Nat'l Bank v. Holwerda (In re Holwerda),* 29 B.R. 486, 489 (Bankr M.D.Fla.1983) (citations omitted). Thus, Chief Judge Paskay's language in *Bilzerian* evidences a dramatic shift away from the "receipt of benefits" theory. As a result of this shift, the Eastern District of Pennsylvania cited *Bilzerian* for the proposition that property received by fraud must be obtained by the debtor *personally* for purposes of § 523(a)(2)(A). *See Sears, Roebuck and Co. v. Naimo (In re Naimo),* 175 B.R. 878, 880 (Bankr.E.D.Pa.1994).

[5]For a thorough discussion of these three theories, see *Jacobs v. Mones (In re Mones),* 169 B.R. 246, 250-53 (Bankr.D.C.1994), and *Wade,* 43 B.R. at 980-82.

debtor in *Ashley* argued that he did not receive the money for himself.  However, the debtor had contributed to loans to keep the business afloat, and the debtor's conduct in arranging the loans from the creditors was part of "a business plan to gain a foothold in the machine shop industry."  *Ashley,* 903 F.2d at 604.  Although the Ninth Circuit found the debtor's connection to the business to be somewhat attenuated, the court nevertheless concluded that it "placed him in a position to benefit from any infusion of capital to that enterprise."  *Id.*[6]

The Fifth and Sixth Circuits addressed the meaning of "obtain" in § 523 in the context of deciding whether the fraud of a partner should be imputed to an "innocent" partner.  Both circuits concluded that the claim against the innocent partner was subject to § 523 because the "innocent" partner received benefits from the fraudulent conduct.  *Ledford,* 970 F.2d at 1561-62;  *Luce,* 960 F.2d at 1281-83.  *But see Allison v. Roberts (In re Allison),* 960 F.2d 481, 486 (5th Cir.1992) (declining to impute the fraudulent acts of one spouse to the other uninvolved spouse).

If it is acceptable to impute the fraud of one partner to other partners who had no knowledge of the fraud simply because

---

[6]The Ninth Circuit explained the debtor's benefit in the following statement:

> One may characterize this event in either of two ways: (a) [the debtor] was sufficiently closely related to AMM to be considered a recipient of the $61,000 loan; or (b) although not a recipient of the $61,000, [the debtor] did profit because he had a financial interest in AMM.  On either theory, [the debtor] obtained "money, property, services, ... or ... credit" for himself.

*Ashley,* 903 F.2d at 604 n. 5.

they received a benefit, then it is certainly logical to hold Bilzerian responsible here because of his active participation in the fraud and his receipt of benefits therefrom. Suncoast was composed of HSSM, as sole limited partner, and BFC as the general partner.[7] Bilzerian induced HSSM to invest in Suncoast. As the other partner in Suncoast, BFC stood to benefit from HSSM's $20.4 million investment in Suncoast. In addition, Bilzerian's connections with the companies "placed him in a position to benefit from any infusion of capital to that enterprise." *Ashley,* 903 F.2d at 604. Furthermore, the district court in Texas found that "Bilzerian personally had an override of 25% on the partnership investment by Suncoast in Bilzerian Partners Limited Partnership 1 (BPLP-1) and in Bilzerian Partners Limited Partnership, Series B (BPLP-B)." Findings of Fact and Conclusions of Law, BR42, Ex. F at 2.[8]

It is true that courts should narrowly construe exceptions to

---

[7]In his brief, Bilzerian refers to BFC as "one of *my* companies." Appellant's Initial Br. at 6. In addition, Bilzerian admitted to the following sentence in HSSM's Complaint To Determine Dischargeability Of Debt And Objecting To Discharge: "HSSM is a limited partner in an entity known as Suncoast ... *a Bilzerian controlled partnership,* and in which Bicoastal Financial Corporation ... is the general partner." BR1 at 1; BR31 at 1 (emphasis added).

[8]When discussing the value of HSSM's interest in Suncoast, the district court commented about the interrelationships among these companies and partnerships as follows:

> HSSM's limited partnership interest in Suncoast is a unique asset of a peculiar character and value because it is an interest in a limited partnership with a narrow purpose and due to Mr. Bilzerian's control of the investment and the interrelationships of Suncoast, BPLP-1, and BPLP-B....

Findings of Fact and Conclusions of Law, BR42, Ex. F at 3.

discharge against the creditor and in favor of the debtor. *See St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 680 (11th Cir.1993). However, granting a debtor a discharge based solely on the fact that he or she did not *directly* receive a benefit places a limitation on § 523 that is not apparent from the text of the provision itself. Moreover, such a limitation would provide a dangerous incentive for the sophisticated debtor, who could circumvent the provision by creating a shell corporation to receive the fruits of his or her fraud. As we have previously stated, we will not allow "the malefic debtor [to] hoist the Bankruptcy Code as protection from the full consequences of fraudulent conduct." *St. Laurent,* 991 F.2d at 680.

In light of persuasive circuit authority, we conclude in this case that the district court properly applied the "receipt of benefits" theory in concluding that Bilzerian's debt to HSSM was subject to the § 523(a)(2)(A) exception to discharge.[9]

*B. Collateral Estoppel*

Bilzerian also faults the district court for applying the principles of collateral estoppel to deny the discharge of his debt to HSSM. He argues that HSSM suffered no loss as a result of his allegedly fraudulent representations. HSSM contends that as a

---

[9]Bilzerian criticizes the district court for making its own review of the Texas record to determine if he received a benefit and thus making its own fact-findings rather than accepting those of the bankruptcy court. The district court did re-construct and present a version of the facts in the Texas court that was not contained in the jury instructions or the Texas district court's factual findings. However, we are persuaded from the jury instructions, the Findings of Fact and Conclusions of Law of the district court in Texas, and Bilzerian's own admissions to HSSM's adversary complaint, that he obtained a benefit.

result of the Texas judgment, Bilzerian is collaterally estopped from relitigating the elements of § 523(a)(2)(A).

Collateral estoppel prevents the relitigation of issues already litigated and determined by a valid and final judgment in another court. It is well-established that the doctrine of collateral estoppel applies in a discharge exception proceeding in bankruptcy court. *See Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991); *Hoskin v. Yanks (In re Yanks),* 931 F.2d 42, 43 n. 1 (11th Cir.1991). However, collateral estoppel only applies if the following elements are present:

(1) The issue in the prior action and the issue in the bankruptcy court are identical;

(2) The bankruptcy issue was actually litigated in the prior action;

(3) The determination of the issue in the prior action was a critical and necessary part of the judgment in that litigation; and

(4) The burden of persuasion in the discharge proceeding must not be significantly heavier than the burden of persuasion in the initial action.

*Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush),* 62 F.3d 1319, 1322 (11th Cir.1995) (citation omitted).

In order to prevail on its § 523(a)(2)(A) claim, HSSM as the creditor must prove by a preponderance of the evidence the following elements: (1) the debtor made a false representation with intent to deceive the creditor; (2) the creditor relied on the representation; and (3) the creditor sustained a loss as a result of the representation. *St. Laurent,* 991 F.2d at 676-77. Moreover, the creditor's reliance must be justified. *See Field v.*

*Mans,* --- U.S. ----, ----, 116 S.Ct. 437, 445-46, 133 L.Ed.2d 351 (1995); *City Bank & Trust Co. v. Vann (In re Vann),* 67 F.3d 277, 281 (11th Cir.1995). The Texas court instructed the jury regarding fraud as follows:

> In order to establish that it was defrauded by Defendants, HSSM must prove: (1) that a material representation of fact, either past or present, was made by Mr. Bilzerian; (2) that it was false; (3) that when the misrepresentation was made, Mr. Bilzerian knew it was false or made it recklessly without any knowledge of its truth; (4) that Mr. Bilzerian made the misrepresentation with the intention that HSSM act on it; and (5) that HSSM acted in reliance on the representation.

BR42, Ex. C at 6. The issues presented to the jury in the Texas case are almost identical to the issues in the bankruptcy case. The only difference is that the Texas court instructed the jury that HSSM's reliance on the representation must be "reasonable" instead of justifiable. *See id.* The reasonable reliance standard is more stringent than is the justifiable reliance standard. *Vann,* 67 F.3d at 280. Thus, by meeting the more stringent standard, HSSM has satisfied the reliance element.[10]

Furthermore, the fraud issue was actually litigated in the

---

[10]Bilzerian argues that because HSSM alleged four misrepresentations, one of which he claims is insufficient under § 523(a)(2)(A), and because the jury rendered a general verdict, the issues in the Texas litigation were different from those in the bankruptcy proceeding. Bilzerian is concerned about the misrepresentation HSSM alleged that he made regarding his net worth. The Fifth Circuit rejected Bilzerian's multiple theory argument as meritless but gave no reasons for its conclusion. *HSSM # 7 Limited Partnership v. Bilzerian,* No. 92-1261, 988 F.2d 1209 (5th Cir. March 9, 1993) (per curiam). However, the district court in Texas specifically found that without the "put," HSSM would not have become a partner in Suncoast. Findings of Fact and Conclusions of Law, BR42, Ex. F at 2. Thus, the jury verdict, when taken in conjunction with the Texas district court's finding, compels the conclusion that Bilzerian was found to have made misrepresentations on topics other than his net worth.

Texas case during a seven-day trial, and the issue was a necessary part of the Texas judgment. HSSM was required to prove its case by a preponderance of the evidence, the same burden applied to § 523(a) discharge cases. The elements of collateral estoppel are present in this case. Accordingly, Bilzerian was properly estopped from relitigating the fraud issue in the bankruptcy court.

Finally, Bilzerian's argument that HSSM did not sustain a loss is meritless in light of the money judgment entered in favor of HSSM in the Texas case.

## V. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment reversing the bankruptcy court's order.

AFFIRMED.[11]

---

[11]We deny all pending motions filed by the appellant and the appellee.