**In re Theodore and Margaret VINECKI, Debtors.**

**The St. Paul Fire and Marine Insurance Company, Plaintiff,**

v.

Feb. 25, 2000.

Theodore Vinecki and Margaret Vinecki, St. Petersburg, FL, Gary A. Carnal, St. Petersburg, FL, for Defendants.

Arthur S. Weitzner, Sarasota, FL, for Plaintiffs.

## FINDINGS OF FACTS, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

ALEXANDER L. PASKAY,
Bankruptcy Judge.

The matter under consideration in this Chapter 7 liquidation case is a claim of nondischargeability asserted by The St. Paul Fire and Marine Insurance Co. (St. Paul) against Theodore Vinecki and Margaret Vinecki (Debtors). In its Complaint, St. Paul alleged that the Debtors obtained money from St. Paul by false pretenses, false representation or actual fraud, therefore, the debt owed to St. Paul by the Debtors should be excepted from the overall protection of the general discharge by virtue of Section 523(a)(2)(A) of the Bankruptcy Code.

The facts relevant to the claim under consideration, as established at the final evidentiary hearing are as follows.

The Debtors were married in 1984 and were still married in 1989 when they formed a corporation known as T & M Trucking and Leasing, Inc., (T & M). This was a Subchapter S corporation and the Debtors were the sole stockholders and officers of T & M. T & M operated a fleet of trucks in interstate commerce under an I.C.C License.

In October 1996, T & M procured, through an independent insurance agency, Caputo Insurance Agency, Inc., (Caputo) an insurance policy from Athena Insurance Company, a division of St. Paul. The Policy, No. CA 05500947, covered the fleet then operated by T & M. On January 17, 1997, the coverage was extended by an endorsement which added a 1996 Freightliner Tractor, Serial No. 1FUYDX-YB6TH709990 (the Truck) to the Policy which already covered T & M's fleet. The endorsement identified T & M as the owner of this new addition to the coverage and indicated as the loss payee R.P.S., Inc. (Pl.'s Ex. 11)

The Truck was originally purchased in 1995 from Hunt, Inc., and the purchase was financed by Mercedes–Benz Credit Corp. (Mercedes–Benz).

It is unclear from this record why the title certificate identified Mercedes–Benz as the owner and also as the holder of the first lien on the Truck which, of course, is a legal impossibility since one cannot have a lien on its own property because the lien interest is merged into the ownership interest. The Truck was leased to T & M and under the lease was required to carry sufficient insurance to protect the interest of Mercedes–Benz. This record is void of any evidence to show the identity, except the corporate name and the interest of R.P.S., who was indicated to be the loss payee under the policy covering the Truck (Pl.'s Ex. 1).

In September, 1997, the Truck was involved in an accident in Buffalo, Wyoming, and the Truck was a total loss. Theodore Vinecki, on behalf of T & M, submitted a Sworn Statement of Proof of Loss (the Form) (Pl.'s Ex. 1) and claimed a loss for the Truck and a utility trailer valued at $59,000. The Form submitted identified R.P.S., Inc., as the loss payee. The Form does not indicate that Mercedes–Benz had any interest in the Truck or in the utility trailer. In due course, St. Paul issued its draft No. 063564981 (Pl.'s Ex. 2) in the amount of $58,000 payable jointly to T & M and R.P.S., Inc. The check was deposited in the corporate account of T & M and cleared by the bank, even though the check was not endorsed by R.P.S., Inc.

On June 1, 1998, Mercedes–Benz informed St. Paul that it was the owner of the Truck and intended to file a claim for the loss under the insurance policy issued by St. Paul covering the Truck. In support of its claim, the letter sent by Mercedes–Benz included a copy of the Motor Vehicle Lease Agreement and the title indicating that the Truck had been owned by Mercedes–Benz. (Pl.'s Ex. 3). St. Paul honored the claim and eventually paid Mercedes–Benz $58,000 and obtained the title to the Truck.

On June 17, 1999, the Debtors filed their Joint Petition for Relief under Chapter 7 of the Bankruptcy Code. St. Paul timely filed the Complaint involved in this adversary proceeding, No 99–570, which sought a determination of nondischargeability of the liability of the Debtors to St. Paul pursuant to Section 523(a)(2)(A) of the Code.

This Section provides:

§ 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

■ The provisions of the Code concerning the discharge of debts are remedial and are traditionally construed liberally in favor of Debtors and strictly against parties who seek to except a particular debt owed to the challenging party from the general bankruptcy discharge. The liberal construction is consistent with the well recognized policy aim of the Code which, as annunciated by the courts, was to give a "fresh start in life free from the past financial misfortunes of debtors." *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); *Local Loan v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *See also Parker–Marshall Group, Inc. v. Lee,* 188 B.R. 297 (M.D.Fla. 1995). *In re Boodrow,* 126 F.3d 43 (2d Cir.1997).

■ However, it is equally true that even the most liberal construction cannot save a debtor once it has been established by competent proof all of the operating elements of one of the several exceptions to the discharge. Moreover, the standard of proof is no longer clear and convincing, but the less rigorous preponderance of the evidence standard. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Before applying the foregoing legal principles to the facts established at the final evidentiary hearing, it should be noted that at the end of the presentation in-chief by St. Paul, this Court granted the Motion for Involuntary Dismissal filed by counsel for Margaret Vinecki. The claim of non-dischargeability against her was dismissed on the ground that the proof presented by St Paul fell short of establishing a prima facie case against her. This left for consideration the claim against Theodore Vi-necki, the other Debtor involved in this adversary proceeding.

The primary thrust of St. Paul's claim is based on the proposition that this Debtor obtained money from St. Paul by false pretenses, misrepresentation or actual fraud. This claim is based on the undeniable fact that both the Policy Change Endorsement (Pl.'s Ex. 11) and the Proof of Loss Form (Pl.'s Ex. 1) identified R.P.S., Inc., as the Loss Payee, which was patently false because it is clear that the true loss payee under the Policy and the Endorsement was Mercedes–Benz, and there is nothing in this record to show that R.P.S., Inc., ever had any cognizable interest in the Truck.

■ However, before one considers the falsity and its impact, it is necessary to establish that this Debtor "obtained money" by fraud from St. Paul. The draft issued by St. Paul as payment for the loss of the Truck was made payable to T & M Trucking and Leasing, Inc., and R.P.S., Inc. Then the draft was deposited in the corporate account of T & M Trucking and was cleared by the bank, even though it was not endorsed by R.P.S., Inc. Be that as it may, it is clear that T & M Trucking was a Subchapter S corporation and all corporate income flew through to the Debtors. It is fair to infer that the Debtor benefitted from the insurance proceeds paid by St. Paul. Thus ordinarily, under the "receipt of benefit" doctrine the Debtor did obtain monies from St. Paul. *In re Bilzerian,* 100 F.3d 886 (11th Cir.1996). While the fact pattern involved in *Bilzerian* bears no resemblance to the fact pattern involved in the present instance, the doctrine is still applicable.

■ However, this is just the starting point of the inquiry and there still must be satisfactory proof of fraudulent conduct by the person charged. The only relevant proof in this record are two crucial documents. One is the Policy Endorsement and the other is the Proof of Loss submitted to St. Paul, both of which contained an

untrue statement concerning the identity of the loss payee under the Policy. There is some difficulty with both of these documents. The Proof of Loss is signed by the Debtor Theodore Vinecki, but it is not notarized even though the form calls for a sworn statement of the proof of loss. The Policy Change Endorsement, which added the coverage on the truck, also identifies R.P.S. as the loss payee. This document is not signed by the Debtor and neither is the Commercial Policy Change Request (Pl.'s Ex. 11). The Debtor denied that he prepared these documents and that he furnished any of the information on these forms, especially the information concerning the identification of the loss payee. One might conclude from the foregoing that the proof on this crucial issue is in equilibrium, therefore, St. Paul failed to establish with the requisite degree of proof the misrepresentation, false pretenses or actual fraud, any of which is an indispensable element for a viable claim under Section 523(a)(2)(A). However, this conclusion does not bear close analysis.

First, it is very hard to accept the proposition that the incorrect information on both documents were dreamed up by the insurance agent who handled both transactions, and it is fair to infer that the incorrect information came from the Debtor. This, coupled with the undeniable and undisputed fact that the Debtor deposited the draft received from St. Paul and obtained all the proceeds of the draft monies, which he very well knew that he was not entitled to and should have been paid to Mercedes Benz, is more than sufficient to establish the requisite fraudulent intent to sustain a claim under Section 523(a)(2)(A). Therefore, the debt owed by Theodore Vinecki to St. Paul is within the Section 523(a)(2)(A) exception and is not released by the general discharge of Theodore Vinecki entered in this case.

In addition to seeking a determination of the nondischargeability of the debt, St. Paul also seeks a money judgement for damages including interest, costs and reasonable attorney's fees. This Court is not completely satisfied that St. Paul is entitled to attorney fees, nor is it satisfied that it is appropriate for this Court to enter a money judgment without the consent of the Defendant. For this reason this matter shall be scheduled for oral argument before the undersigned in Courtroom 9A, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida 33602, on March 21 2000, at 10:00 am.

A separate Final Judgment shall be entered in accordance with the foregoing.